385 F.2d 116
 Nettie GELFAND and Phillip Gelfand, Plaintiffs-Appellants,
v.
TANNER MOTOR TOURS, LTD. (California Corporation), Tanner Motor Tours of Nevada, Ltd. (Nevada Corporation), Tanner Motor Tours Corporation, Limited (a Nevada Corporation), Tanner Motor Tours, Ltd. (a Nevada Corporation), Tanner Motor Tours, Ltd. of California (a California Corporation) and Lucky Cab Co. (a Nevada Corporation), Defendants-Appellees.
 No. 77.
 Docket 31156.
 United States Court of Appeals Second Circuit.
 Argued October 13, 1967.
 Decided November 13, 1967.
 
 Richard E. Shandell, New York City (Fuchsberg & Fuchsberg, New York City, on the brief), for plaintiffs-appellants.
 William J. Quinlan, New York City (Denis R. Sheil, New York City, on the brief), for defendants-appellees.
 Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.
 LUMBARD, Chief Judge:
 
 
 1
 The sole question on this appeal is whether defendant corporations are doing business in New York through their promotional representative, Herbert J. DeGraff, so as to give the district court personal jurisdiction over them under traditional principles of New York law as preserved by § 301 of New York Civil Practice Law and Rules. All other grounds for in personam jurisdiction over defendants were considered and rejected in an earlier opinion of this court, 339 F.2d 317 (2 Cir. 1964) when we remanded the case for further findings on the issue now before us. On remand, the district court again found that defendants' activities in New York were not sufficient to warrant a finding that they were doing business in New York. Upon the additional evidence now before us and in light of a New York opinion written after the decision below, we reverse.
 
 
 2
 The plaintiffs, New York residents, brought suit for injuries sustained on May 4, 1962 when a wheel broke off a Gray Line bus in which they were riding in Arizona en route from Las Vegas to the Grand Canyon. Mr. and Mrs. Gelfand sued six corporate defendants. Three defendants have moved to dismiss the complaint. Although the other three named defendants did not appear the district court dismissed the action against all six defendants. The three moving defendants are Tanner Motor Tours, Ltd. (California), Tanner Motor Tours of Nevada, Ltd. and Lucky Cab Co. Tanner (California) operates sightseeing and charter bus services in Southern California and also performs interstate services for Tanner (Nevada). That corporation operates sightseeing and charter bus service in Clark County, Nevada, and also operates a car rental agency. The district court assumed, but did not make a finding, that Tanner (Nevada) operated the Grand Canyon tour. The record leaves open the possibility that Tanner (California) operated some or all of the tour buses. Lucky Cab Co. operates a taxicab service in Las Vegas and Clark County, Nevada. Defendants are related companies under common ownership. The parent company is Tanner Motor Livery, Ltd., not named as defendant in this suit.
 
 
 3
 The moving defendants also are members of Gray Line Sight-Seeing Companies Associated, Inc., a non-profit membership corporation organized under Maryland law. As such they are licensed to use the words "Gray Line" in promoting their tours. Gray Line Associated does not operate any sightseeing or tour services of its own. Its expenses are met from dues paid by more than 90 members. The Tanner companies account for approximately 14 or 15% of the total sightseeing business of the Gray Line companies.
 
 
 4
 Gray Line Associated conducts national advertising programs and public relations campaigns and contacts travel agents to induce them to use its members' facilities. It has a contract with Herbert J. DeGraff Associated, Inc. to act as its sales service representative. In New York, Gray Line Associated is listed at an office maintained by DeGraff Associated, Inc. at 501 Madison Avenue. Mr. Herbert J. DeGraff holds the title of Vice President of Sales for the Eastern Region of Gray Line Associated. However that position imposes no duties on him beyond those provided in the contract between Gray Line Associated and his organization. In consideration of an annual fee of $23,500, DeGraff Associated, Inc. agreed:
 
 
 5
 "A. To represent Gray Line as travel representative and agent in the Eastern portion of the United States as specified by Executive Committee directives;
 
 
 6
 "B. To familiarize itself fully with all services and facilities offered by Gray Line members;
 
 
 7
 "C. To contact and fraternize with travel forwarders situated in the Eastern portion of the United States;
 
 
 8
 "D. To take letters for folders and other printed material prepared for distribution by Gray Line and Gray Line members;
 
 
 9
 "E. To gather all available information on specialized group movements and forward such advice to interested Gray Line members;
 
 
 10
 "F. To compile data on all conventions which will occur in cities where there are interested Gray Line members and forward such reports to such members;
 
 
 11
 "G. To advise interested Gray Line members of all travel movements and to solicit such business for Gray Line members;
 
 
 12
 "H. To maintain an office in New York properly staffed to run the above services and assist in processing all Gray Line orders;
 
 
 13
 "I. To promote the overall welfare of Gray Line."
 
 
 14
 The agreement would terminate automatically if Herbert J. DeGraff was disabled. DeGraff Associated represents many other clients in the travel business besides Gray Line Associated.
 
 
 15
 The court below found that DeGraff Associated was retained as an independent contractor by Gray Line Associated. Mr. DeGraff did not receive direct payment from any of the defendants for any of the services he performed and he is not on the payroll of any of them nor an officer, director or stockholder of any of them. There was no evidence that DeGraff or his corporation were under the control of defendants or that Gray Line Associated was under the control of Tanner, although the president of the Tanner corporations, C. H. Tanner, was also president of Gray Line Associated until October 1964.
 
 
 16
 Mr. DeGraff's most important work for Gray Line Associated was in arranging package tours with major wholesale travel agents and transportation carriers. However DeGraff also provided a special service for whichever defendants ran the Grand Canyon tour. Although under no contractual obligation to the Tanner corporations, DeGraff Associated cleared reservations for the Grand Canyon tour. Until informed by Gray Line of Las Vegas, the promotional name used by defendants who operated the Grand Canyon tour, that space was no longer available, DeGraff confirmed reservations, except group reservations, without obtaining Las Vegas' approval. In 1962, 1963 and 1964, approximately 3,000 of 7,000 total annual passenger reservations on the tour were cleared and confirmed by DeGraff. The value of the bookings confirmed through DeGraff Associated each year was approximately $120,000. Six of DeGraff's clerks spent part of their time working on Grand Canyon reservations. Mr. DeGraff testified that without his reservation service the tour could not be effectively merchandised.
 
 
 17
 The amenability of the defendant corporations to suit in a federal diversity action is governed by the law of the state in which the federal court sits, unless it should be found not to comply with constitutional requirements. Arrowsmith v. United Press International, 320 F.2d 219, 6 A.L.R.3d 1072 (2 Cir. 1963). This suit, having been brought in the Eastern District of New York, we must look to New York law.
 
 
 18
 New York's highest court recently said in Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 281 N.Y.S.2d 41, 43-44, 227 N.E.2d 851, 853 (1967):
 
 
 19
 "[A] foreign corporation is amenable to suit in our courts if it is `engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.' * * * (See, e. g., Bryant v. Finish Nat. Airline, 15 N.Y.2d 426, 430, 260 N.Y.S.2d 625, 627, 208 N.E.2d 439, 440 * * *; Berner v. United Airlines, 3 N.Y.2d 1003, 170 N.Y.S.2d 340, 147 N.E.2d 732 * * *.) Although `mere solicitation' of business for an out-of-state concern is not enough to constitute doing business (Miller v. Surf. Prop., 4 N.Y.2d 475, 480, 176 N. Y.S.2d 318, 320, 151 N.E.2d 874, 876. See International Shoe Co. v. State of Washington, 326 U.S. 310, 315, 66 S. Ct. 154, 158, 90 L.Ed. 95 * * *), due process requirements are satisfied if the defendant foreign corporation has `certain minimum contacts with [the State] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice'". (International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, supra; see Simonson v. International Bank, 14 N.Y.2d 281, 286, 251 N.Y.S.2d 433, 436, 200 N.E. 427, 429, supra.) (Citations partially omitted.)
 
 
 20
 Judge Dooling found that there was no personal jurisdiction over the defendant corporations because their contacts with New York through Gray Line Associated and DeGraff Associated lacked "some integrating factor, like directness of control, or the formalization of service, obligations of the kind covered by explicit contract in the Berner case, to establish the sort of continuity and substantiality of relation that, by pragmatic testing, leads to the conclusion that defendants should be suable in New York." The Frummer case, decided after Judge Dooling's opinion, indicates that DeGraff's activities included the "integrating factor" which the district court believed lacking.
 
 
 21
 In Frummer v. Hilton Hotels International, Inc., supra, plaintiff was injured in the London Hilton Hotel. He sued Hilton Hotels (U.K.) Ltd., lessee and operator of the hotel and a British Corporation, in New York. The New York Court of Appeals found that the corporation was doing business in New York "in the traditional sense" because the same services which were provided by the New York office of the defendant in the Bryant case, supra,[1] were provided for the defendant in Frummer by Hilton Reservation Service, a non-profit corporation owned in common by the Hilton corporations. In addition, unlike defendant's New York office in Bryant, Hilton Reservation Service accepted and confirmed reservations. The court in Frummer specifically disavowed any reliance upon the corporate relationship of the two Hilton subsidiaries other than that "it gives rise to a valid inference as to the broad scope of the agency in the absence of an express agency agreement such as the one which existed in the Berner case". 281 N.Y.S.2d at 45, 227 N.E.2d at 854.
 
 
 22
 The Frummer opinion distinguished Miller v. Surf Properties, supra, upon which the district court in this case relied. In Miller, plaintiff was injured in a Florida hotel owned and operated by defendant and brought an action in New York. Plaintiff claimed that defendant had sufficient contacts with New York to be subject to suit because of an oral agreement with Broadway Resort Service. Telephones at Broadway's New York office were listed in the names of between 40 and 50 hotels. For an annual fee of $750.00 Broadway answered inquiries and forwarded requests for space to Florida for approval. Reservations did not become final until accepted by the hotel in Florida. The Frummer court stated that in Miller the services performed in New York amounted to little more than rendering telephone service and mailing brochures. Without confirmation of reservations by the New York agent this was "mere solicitation."
 
 
 23
 In our view, the decisive test is that upon which the court in Frummer relied, "the [reservation] Service does all the business which [defendant corporation] could do were it here by its own officials." 281 N.Y.S.2d at 44, 227 N.E.2d at 854. In the context of the Frummer case, we take this to mean that a foreign corporation is doing business in New York "in the traditional sense" when its New York representative provides services beyond "mere solicitation" and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.
 
 
 24
 Mr. DeGraff testified that the reason his office booked reservations for Tanner's Grand Canyon tour was that "this was the only way that you could merchandise that tour of the Grand Canyon." It is clear from the record that unless defendants had arrived at this working arrangement with DeGraff or a similar arrangement with some other New York representative, they would either have had to open their own reservation office in New York or give up the Grand Canyon tour. Since DeGraff confirmed the tour reservations in New York and in addition maintained a broad range of services similar to those of Hilton Reservation Service or the New York office of defendant corporation in the Bryant case, whatever DeGraff's relationship to the other members of the Gray Line Association might be, DeGraff was acting as an agent for the Tanner Company or companies operating the Grand Canyon tour to a sufficient extent to satisfy the doing business test as stated by the New York Court of Appeals in the Frummer case.
 
 
 25
 We conclude that Tanner's reliance upon DeGraff Associated for three-sevenths of its business on the Grand Canyon tour, generating $120,000 a year in bookings confirmed in New York is sufficient contact with New York to satisfy the due process requirements of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and establish a systematic course of doing business in New York by the Tanner corporations participating in operation of the Grand Canyon tour. As the New York court noted in Frummer, "We are not unmindful that litigation in a foreign jurisdiction is a burdensome inconvenience for any company. However, it is part of the price which may properly be demanded of those who extensively engage in [interstate] trade. When their activities * * * through an agent, become as widespread and energetic as the activities in New York conducted by [defendant], they receive considerable benefits from such * * * business and may not be heard to complain about the burdens." 281 N.Y.S. 2d at 45, 227 N.E.2d at 854.
 
 
 26
 We are not called upon to consider the merits of the policy expressed by New York's test for in personam jurisdiction over foreign corporations which, being constitutionally permissible, is binding upon us. The question of whether or not the Eastern District of New York is an appropriate forum, as opposed to the question of whether or not it is a permissible forum, is not before us.[2]
 
 
 27
 The district court has in personam jurisdiction over the defendant corporation or corporations which operated the Grand Canyon tour under the name "Gray Lines of Las Vegas." As to those defendants who operated the Grand Canyon tour the judgment of the district court is reversed.
 
 
 
 Notes:
 
 
 [1]
 In Bryant v. Finnish National Airlines, supra, defendant corporation was held subject to personal jurisdiction in New York even though it did not fly planes outside of Europe. Defendant's only contacts with New York were through maintenance of a one and a half room office in New York City staffed by four employees. The court stated that "[t]he test for `doing business' is and should be a simple and pragmatic one * * *." 15 N.Y.2d at 432, 260 N.Y.S.2d at 629, 208 N.E.2d at 441. The court's simple and pragmatic holding was that having a lease on a New York office, employing four people, having a bank account with an average balance less than $2,000, doing public relations and publicity work including maintaining contacts with other airlines and travel agencies and transmitting requests for space to Europe and helping to generate business in New York "should be enough."
 
 
 [2]
 Of course defendants are free to raise the question of the appropriateness of the forum by moving under 28 U.S.C. § 1404(a) to transfer the action to a more convenient forum upon remand to the district court