**CABALLERO SPANISH MEDIA, INC., Plaintiff,**

v.

**BETACOM, INC. and Betacom of Phoenix, Inc., Defendants.**

No. 83 Civ. 6903.

United States District Court, S.D. New York.

Aug. 21, 1984.

Brill & Meisel by Allen H. Brill, New York City, for plaintiff.

Seaman and Ashley and Cohen by Perry Ashley, New York City, for defendants.

## OPINION

MOTLEY, Chief Judge.

On January 20, 1980, plaintiff Caballero Spanish Media (CSM) entered into an agreement with Hispanic Communications Corp. (HCC), the owner of Arizona radio station KVVA. CSM was to act as the exclusive national advertising representative for KVVA in selling advertising time during the term of the agreement, which was three years ending on January 31, 1983. It also provided for three additional years if neither party cancelled. Neither party did so, and the agreement therefore was to expire on January 31, 1986.

At some time prior to April 1983, HCC and Betacom, Inc. entered into a purchase agreement for the sale of the assets of KVVA. In April 1983, Betacom, Inc. assigned its rights under the purchase agreement to Betacom of Phoenix, Inc., a wholly owned subsidiary of Betacom, Inc. On May 15, 1983, Betacom of Phoenix acquired the assets and has operated the radio station since that time.

In June 1983, after the sale of the station's assets, Eduardo Caballero, president of CSM, wrote to the new owner of KVVA and contended that the representation

agreement automatically renewed beginning February 1, 1983, and indicated that it was still in effect. In July 1983, Patrick Nugent, president of Betacom, Inc., responded by denying that the representation agreement was still in effect with respect to Betacom. Nugent also indicated that Betacom had decided that it did not desire to have the services of CSM and that it had retained a new national advertising representative on an exclusive basis.

Nugent's position to Caballero, as it is before the court in this case, was that when Betacom of Phoenix, Inc. acquired the assets of KVVA from HCC, it assumed only some of HCC's contracts but not the representation agreement with CSM. CSM thereafter sued Betacom, Inc. and Betacom of Phoenix, Inc. claiming that when Betacom purchased the assets of HCC, it became its successor in interest and was, therefore, bound by the terms and conditions of the representation agreement. Betacom moved to dismiss on the ground that the court lacks in personam jurisdiction because defendants are foreign corporations with no contacts in New York. CSM contends that they are doing business in New York through their current national advertising representative.

After Betacom of Phoenix decided not to employ the services of CSM, it entered into a new agreement with Lotus Reps, which has its principal place of business in New York City. Nugent visited the New York offices of Lotus Reps at least once between the time Betacom of Phoenix took over operations in May 1983 and November 1983 when he submitted an affidavit to that effect. National sales account for 20% of station KVVA's revenues.

During the three years when CSM was the national representative for KVVA prior to Betacom's break with CSM, KVVA's total national sales were well over half a million dollars, over $400,000 of which came from the New York City office. As a national representative, CSM solicited advertising clients, negotiated rates, prepared and executed contracts, and billed and collected. In addition to its relation with Lo-

tus Reps, Betacom, Inc. is the majority shareholder in Beta Communications which operates another radio station in Arizona, KSTM. That station has an agreement with Roslyn Reps, also of New York, to act as that station's national advertising representative.

■ As an initial matter, the court must consider at this point of the proceedings the pleadings and affidavits in a light most favorable to the plaintiff. Plaintiff only need make out a prima facie showing of jurisdiction and the parties are not bound by the court's initial jurisdictional findings when the case goes to trial. *Ghazoul v. Int'l Mgt. Services, Inc.*, 398 F.Supp. 307, 309-10 (S.D.N.Y.1975). For the following reasons, the court concludes that CSM has made a sufficient showing of jurisdiction to permit this action to continue.

It is not disputed that New York law applies. There are at least two distinct jurisdictional bases under New York law which may be used to bring foreign commercial defendants under this court's jurisdiction: C.P.L.R. §§ 301 and 302(a)(1).

■ C.P.L.R. § 301 permits jurisdiction over a foreign corporation which is "doing business" in New York, while § 302(a)(1) permits jurisdiction over a foreign corporation which is only "transacting business" in the state. The two provisions involve different criteria for the nature of the contacts with the state. In addition, jurisdiction under the transacting business provision of § 302(a)(1) requires that the cause of action arise out of the business of the foreign corporation that is deemed to be transacted in the state. *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 322 (1981). Here, defendants' contacts with New York through Lotus Reps or even Roslyn Reps cannot provide a basis for jurisdiction under § 302(a)(1) because the cause of action does not arise out of defendants' business with those two national representatives but, rather, it arises out of defendants' relationship with CSM, KVVA's former national representative. Plaintiff, however, cannot assert its own activity as an agent

on behalf of defendants in New York as the basis of jurisdiction over defendants under § 302(a)(1). *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 19 n. 2, 308 N.Y.S.2d 337, 341 n. 2, 256 N.E.2d 506, 509 n. 2 (1970). The only remaining question, then, is whether CSM has made a sufficient prima facie showing that defendants were present and "doing business" in the state through their national advertising representatives in New York to permit jurisdiction under § 301.

In this respect, a leading case in this circuit on jurisdiction under New York's § 301 is *Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116 (2d Cir.1967), *cert. denied,* 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968). There the court stated that a foreign corporation is doing business under § 301:

> when its New York representative provides services beyond "mere solicitation" and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.

385 F.2d at 121. The court held that jurisdiction existed over a foreign corporation tour operator because its representative booked and confirmed reservations in New York, generated three-sevenths of defendant's business amounting to $120,000 a year, and therefore engaged in a "systematic course of doing business in New York." *Id.*

■ In this case, defendants' contact with New York has been continuous and systematic. Betacom of Phoenix has a contractual relationship with Lotus Reps, its exclusive national representative with a principal place of business in New York. Construing the affidavits in a light most favorable to plaintiff, it appears that national advertising representatives provide a variety of services for radio stations such as KVVA beyond mere solicitation including negotiation of rates, preparation and execution of contracts, and billing. Lotus Reps maintains an office with employees in

New York. In the two years prior to its contract with Lotus Reps, station KVVA received over $120,000 per year in national sales through the New York office of CSM. This constitutes the type of continuous, systematic, and substantial business contact with New York which establishes doing business under *Gelfand.* If this were not enough, defendants have an additional presence in New York because Betacom, Inc. has a controlling interest in a company which operates a second Arizona radio station, KSTM, which has another New York based national advertising representative, Roslyn Reps.

The court in *Katz Communications, Inc. v. Evening News Ass'n,* 705 F.2d 20 (2d Cir.1983), recently found under facts similar to this case that, in a suit by a former national advertising representative, a foreign corporation owning broadcasting stations was doing business in New York through it new national advertising representative. This finding was based on the services it derived from the representative and on the fact that the foreign corporation's employees made periodic visits to the national representative's New York office to discuss plans, strategies and tactics. Although defendants in this case have met with their national representative in New York at least once, they do not appear to make the type of periodic visits as existed in *Evening News.* Nothing in that opinion, however, suggests that there would not have been jurisdiction absent such visits. The court simply considered all the facts particular to the case taken as a whole.

■ That such visits to New York by the foreign corporation's officers are not a necessary element to "doing business" under § 301 is illustrated by the court's holding in *Gelfand v. Tanner Motor Tours, Ltd., supra.* There the finding of doing business was predicated on the services provided to the foreign defendant by its New York agent. The court made no mention of any visits to New York by the foreign defendant's employees.

With respect to the nature and extent of a foreign broadcaster's contacts with its

national advertising representatives, the New York case of *Katz Agency, Inc. v. Heftel Broadcasting Corp.*, 56 A.D.2d 758, 392 N.Y.S.2d 39 (1st Dep't 1977) makes it clear that defendants' contacts through Lotus Reps and Roslyn Reps are sufficient to establish jurisdiction under § 301. In that case, defendant's former advertising representative claimed the defendant still owed it certain commissions. The defendant, a foreign corporation with a new national advertising representative in New York, claimed that the New York courts lacked jurisdiction. The court found that jurisdiction clearly existed under both § 301 and § 302(a)(1). It held that the defendant was present and doing business in New York "through its present [national advertising] agent, who had an office here." 392 N.Y. S.2d at 40. Only in the context of its discussion under § 302(a)(1) did the court raise the additional facts that the contract was negotiated in New York and there were visits by defendant's officers to supervise performance. Jurisdiction under that "transacting business" section requires meeting criteria different than those for jurisdiction under § 301. Just as the activity of the defendant's new national advertising representative through a New York office constituted doing business in *Heftel*, the activity of defendants' new national advertising representative, Lotus Reps, constitutes doing business here as well so as to confer in personam jurisdiction over defendants in this case.

For the foregoing reasons, the defendants' motion to dismiss is denied.