**Regina L. DARBY, as the Administratrix C.T.A. of the Goods, Chattels and Credits of Peter Shelly Zeller and Regina L. Darby, Individually, Plaintiffs,**

v.

**COMPAGNIE NATIONAL AIR FRANCE d/b/a Air France, a corporation of France, Societe Des Hotels Meridien, d/b/a Meridien Hotels, Inc., and Meridien Copacabana, Defendants.**

**No. 88 Civ. 7604 (RWS).**

United States District Court, S.D. New York.

April 13, 1990.

---

John DeMaio, New York City, for plaintiffs.

Bower & Gardner, New York City for defendants Societe Des Hotels Meridien and Meridien Copacabana; Richard P. Broder, of counsel.

## OPINION

SWEET, District Judge.

Defendant Societe Des Hotel Meridien ("SHM") moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of *in personam* jurisdiction. For the reasons set forth below the motion is denied.

### Prior Proceedings

Darby filed this complaint on October 25, 1988. Oral argument was heard on November 10, 1989 and on the request of parties leave was granted to submit additional papers. This motion was considered fully submitted as of December 15, 1989.

### Parties

Plaintiff, Regina L. Darby ("Darby"), was the spouse of the decedent and the Administratrix of his Estate.

Decedent, Peter Shelley Zeiler ("Zeiler"), was forty-three years of age and the late husband of Darby. He drowned off the coast of Rio de Janeiro on December 31, 1986.

Societe Des Hotels Meridien ("SHM") is the owner of certain hotels outside of the United States and the corporate parent of Meridien Gestion S.A. ("SMG").

Meridien Hotels, Inc. ("MHI") is a New York corporation with its principal offices located at 888 Seventh Avenue, New York, N.Y. MHI manages hotels within the United States.

Meridien Gestion S.A. ("SMG") is a French corporation, a wholly-owned subsidiary of SHM, and the principal shareholder of Meridien Hotels, Inc. ("MHI").

### Facts

This is an action based upon diversity of citizenship for conscious pain and suffering and wrongful death arising out of the Zeiler drowning in the surf at Rio de Janeiro, Brazil on or about December 31, 1986. Assuming the allegations in Darby's complaint as true for purposes of this motion, Zeiler was a registered guest at a hotel referred to in the caption as "Meridien Copacabana" ("Copacabana"). The allegations set forth that the Copacabana is bordered by treacherous ocean waters and that the coastline is particularly dangerous after extended periods of rain. Darby maintains that the waters were so dangerous and the undertow so strong that the lifeguard, rather than enter the water, would summon helicopters whose pilots used a net to retrieve victims who were drowning. According to Darby, the conspicuous absence of warning signs, safety devices and/or undertow monitoring devices resulted in the needless deaths of several individuals, prior to and including Zeiler.

In November of 1986, Zeiler and Darby, after seeing ads and brochures for the Copacabana, made a reservation through a New York travel agent. All of the brochures and advertisements indicated the Copacabana was a Meridien Hotel without any reference to separate ownership or responsibility.

SHM is not authorized to do business in the State of New York. SHM has no agent designated to accept service of process in New York or in the United States. SHM maintains no offices in New York, nor does it maintain any employees, telephone listing or mailing address in New York. SHM has no assets in New York or anywhere in the United States. SHM maintains no bank accounts in New York. SHM solicits no business in New York, nor does SHM employ any agents for the solicitation of business in New York. SHM did not own, control, manage, or maintain the Copacabana.

According to SHM, MHI does no business on behalf of SHM in New York or anywhere in the United States, nor has it

done any business for SHM since December 1986. Prior to the end of 1986, MHI did perform certain hotel-related services for SHM, consisting of hotel reservation bookings, but, according to SHM, that work ended in December 1986 when SHM made a contribution of its hotel management activity to SMG which took over the staff, procedures, and trademark of SHM. Corporate representatives of SHM state that it has no contact with New York or with the United States.

When Darby and Zeiler made their reservations at the Copacabana through a New York travel agent, MHI was, in addition to its own management of hotels within the United States, operating a toll-free telephone reservations system in the United States for the benefit of owners of Meridien-managed hotels in the United States and elsewhere, including the owner of the Copacabana, a company known as Sisal–Rio Hotels Turismo ("Sisal"). Sisal was and still is owned and operated independently and is not affiliated with any Meridien organization entity. At the time of the accident, Meridien do Brasil Turismo, Ltda. ("MdB") a Brazilian subsidiary of SHM, managed the hotel pursuant to a 1976 contract entered into in Brazil between Sisal and SHM. In accordance with Article XV of that contract the hotel was to be operated under the name "Meridien Copacabana" and the parties acknowledged that the name "Meridien" was the exclusive property of SHM.

Under the same contract Sisal was granted the right to participate in the computerized international reservations system available to hotels managed by SHM and its affiliates. Pursuant to Article IX, Section 2, SHM became obligated to provide reservation services for the benefit of the owner of the hotel. Specifically, Section (2)(i) of that agreement state:

S.H.M. will supply or take the necessary measures so that the affiliated companies supply, at the time of the hotel operation and for the benefit of its customers, this enumeration not being limitative, the following services and facilities:

(i) reservations—The recourse by the hotel to the central reservation service S.H.M. The cost will be born [sic] by the hotel operation prorated on its usage.

The reservations system is known as "Meridien Reservations International". Reservations for space at hotels at international locations (other than the United States, Canada, and the Bahamas) including the Copacabana, were and still are taken through a toll-free 800 number answered in New York City by employees of MHI. The part of the reservations system that is located in New York is operated by MHI for the direct benefits of owners of Meridien-managed hotels, including Sisal. By calling the toll-free number the caller is connected with an MHI employee who, operating a computer terminal, can provide reservations information and take bookings at the Meridien Copacabana, subject to the hotel owner's confirmation policy. MHI's agreement with SHM expressly provides that MHI, as the representative of SHM, "has no authority to enter into any final contracts with guests who desire space in any Hotels or agencies and ... all reservation commitments provided by M.H.I. are subject to acceptance and confirmation by the individual Hotel involved...."

According to SHM, MHI performs nothing more than a "ministerial" function, acting merely as a conduit for information provided by potential guests and by the various Meridien hotels; the reservation agent enters information provided by the caller into the computer and receives information from the hotel as to the availability of accommodations at the particular Meridien hotel. In the case of the Copacabana, the policy of the hotel is to require deposits for after 6:00 p.m. arrivals and at certain times during peak season; at most other times, the computer-generated information is up-to-date and is relied upon to confirm reservations. Where an MHI employee operating a computer terminal as part of the Meridien reservations system can input a reservation as confirmed such employee is doing so only as "a matter of record" because, according to defendants, the hotel itself already has provided information

through the computer about the rooms or space that is available to be confirmed.

SHM contends that the management of its obligations with resect to the Copacabana has been delegated to MdB and similarly the management of certain of its obligations performed in the United States has been delegated to its separate United States subsidiary, MHI. The SHM/MHI relationship is a commercial relationship between separate entities, each with its own office, staff, books, records, assets and liabilities. Consequently, SHM characterizes MHI's reservation activities as the soliciting business for the Copacabana's owner, Sisal—not SHM, pursuant to the 1976 commercial assistance contract between Sisal and SHM.

In November of 1986, MdB was still acting as hotel manager for Sisal's Copacabana. By December 24, however, all of SHM's management functions had been transferred to SMG which allegedly took over the Meridien trademark, the staff and the procedures of SHM, as well as the stock of SHM's subsidiary management companies, including MdB and MHI. The record contains only one letter indicating this transfer occurred. The restated Certificate of Incorporation of MHI is consistent with this understanding of the relationship between SHM and its indirect subsidiary MHI. The certificate provides that among the purposes for which MHI was formed is:

> To promote the interests of hotels located throughout the world managed by [MHI], [SHM] or any affiliate or franchisee of either [MHI] or [SHM] such hotels being hereinafter called Meridien Hotel, by designing, writing, preparing, placing, publishing, distributing, and dis-

playing, in any and every manner, advertisements, brochures and other publicity devices which may bring to the attention of the public the quality and other characteristics of Meridien Hotels.

SHM notes, however, that this purpose contemplates no more than that MHI will solicit business for hotels managed by it, by SHM, and by their respective affiliates. The inclusion of SHM, according to SHM, "merely reflects its status as holder of the 'Meridien' mark, and as such the licensor of franchises of Meridien hotels."

### In Personam Jurisdiction

█ A federal court in a diversity action must look at the forum state's general jurisdictional or long-arm jurisdictional statute to determine whether *in personam* jurisdiction exists over a nonresident defendant. *See Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir.1990) (citing *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 222–25 (2d Cir.1963) (en banc)). If the relevant statute allows the court to exercise jurisdiction then the court must determine "whether the exercise of jurisdiction comports with due process." Id. (citation omitted). In the present action the forum state is New York and Darby alleges that SHM is subject to jurisdiction under § 301 and § 302(a)(1) of the Civil Practice Law and Rule (CPLR).[1] In a motion to dismiss for lack of jurisdiction, the pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

### CPLR 301 and "Doing Business" in New York

█ SHM is a foreign corporation and thus may be subject to jurisdiction in this

---

**1.** Darby asserts jurisdiction under CPLR 302(a) the "long-arm" statute providing jurisdiction over a foreign defendant who "transacts any business" within the state if the cause of action arises from the transaction of business. Nonetheless, Darby fails to establish how the drowning in the disputed vicinity of the Copacabana "arose out of" the hotel reservation system in New York. For the court to exercise jurisdiction under CPLR 302(a), it is incumbent upon the plaintiff to establish that the cause of action arose from the business transacted in New York and not the negligence of the hotel where the

accident occurred. *See Dickson v. Hertz, Corp.* 559 F.Supp. 1169 (D.V.I.1983). Although Darby attempts to relate the alleged negligence of the Copacabana at the time of the drowning back to the time when Darby was "induced" to make the hotel reservations, there is no allegation of any cause of action (nor the proximate chain of causation) that exists for failure of a hotel booking agent to warn of all possible dangers, including drowning in the ocean, that a hotel guest could encounter at any vacation spot on earth.

court if found to be "doing business" in New York pursuant to CPLR § 301.. According to New York courts' interpretation of this section, a non-domiciliary may be subject to *in personam* jurisdiction in New York for any cause of action if the non-domiciliary is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of 'presence' in this jurisdiction." *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427, 429 (1964); *McGowan v. Smith et al.*, 52 N.Y. 2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981); *accord Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762 (1983); *Andros Compania Maritima S.A. v. Intertanker Ltd*, 714 F.Supp. 669, 675 (S.D.N.Y.1989); *Tripmasters, Inc. v. Hyatt Int'l Corp.*, 696 F.Supp. 925, 930 (S.D.N.Y.1988). The "doing business" requirement has been interpreted to mean "not occasionally or casually, but with a fair measure of permanence and continuity," *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)), so as to constitute more than "mere solicitation" of business. *Miller v. Surf Prop.*, 4 N.Y.2d 475, 480, 176 N.Y. S.2d 318, 320, 151 N.E.2d 874, 876. "[O]nce solicitation is found in any substantial degree courts have required very little more to support a conclusion of 'doing business.'" *H. Heller & Co., Inc. v. Novacor Chem. Ltd.*, 726 F.Supp. 49, 53 (S.D.N.Y. 1988) (citations omitted), *aff'd*, 875 F.2d 856 (2d Cir.1989).

### The Relevant Time Frame in Assessing Jurisdiction

█ Consonant with the notion of establishing "presence" as a prerequisite to the court's authority to exercise *in personam* jurisdiction, the jurisdictional inquiry under section 301 covers the activities of the party at the time of service of the summons and the complaint, not the time the alleged cause of action accrues. *Andros Compania*, 714 F.Supp. at 675 (when activity and thus "presence" ceases, corporation is not "doing business" under S301); *see also*

*Aaacon Auto Transport, Inc. v. Barnes*, 603 F.Supp. 1347, 1351 (S.D.N.Y.1985) (plaintiff must allege defendant doing business as of commencement of action). Darby booked and confirmed the reservations at issue here in November of 1986. This lawsuit began on October 25, 1988. To the extent Darby premises the jurisdictional inquiry on the Affidavit of Mazzini who admitted that MHI performed certain hotel-related services, "including hotel reservations bookings" on behalf of SHM prior to the alleged transfer of · SHM's hotel management functions to SMG or any of SHM's activities prior to this suit, these allegations are not considered.

SHM alleges that since the transfer of its hotel management functions, SHM does no business whatsoever in New York. Indeed, none of the classic indicia of "presence" or doing business are alleged. By October 25, 1988, according to SHM, SHM had no assets, no offices, no books, no employees, no bank accounts, no listed telephone number, no mailing address, solicits no business nor employs any agents for the solicitation of business. According to SHM, MHI, SHM's indirect subsidiary, performs no services for the hotels owned by SHM and has not since the commencement of this lawsuit. Nonetheless, Darby asserts jurisdiction on two grounds—that SHM is doing business itself in New York and that MHI is a corporate agent of SHM doing business on behalf of SHM and thus warranting the exercise of jurisdiction over SHM.

### 1. SHM doing business

Darby asserts that the "Meridien chain is knee deep in New York State business activity and should not be allowed to avoid jurisdiction by use of involved intellectual arguments." Darby alleges that the Meridien chain runs a reservation service worldwide for the Meridien chains, maintains offices and employees in New York, advertises and promotes Meridien Hotels worldwide and operates the Parker Meridien, pursuant to MHI's Articles of Incorporation. All of these allegations are accepted as true for the purposes of this motion.

SHM, however, alleges that it has transferred its hotel management functions to its wholly-owned subsidiary SMG. Darby suggests that this transfer is merely a sham, that SHM is delinquent in response to interrogatories, and that SHM has real estate participations in New York. Excepting one unclear letter, SHM's papers do not document any of the alleged contribution of SHM's activities to SMG. The same letter indicates that the Board of Directors of SMG is identical to that of SHM. Moreover, SHM's papers contain contradictory assessments of SHM's current status. For example, ¶ 7 of the Odile affidavit states that SHM transferred its trademark to SMG while ¶ 8 states that the Restated Certificate of Incorporation of MHI reflects SHM's current status as holder of the "Meridien" mark and licensor or franchisee of Meridien hotels. On the basis of the papers submitted, Darby has failed to allege sufficient facts to conclude that SHM, on its own, is present in New York doing business. Nonetheless, Darby's allegations concerning the corporate relationship between MHI and SHM are accepted as true for the purposes of this motion, recognizing the incomplete discovery and the possible propriety of renewing this motion upon completion of discovery. The corporate structure is assumed to not have changed but that MHI has continued its activities in New York. Accordingly, jurisdiction turns on whether SHM is present through its indirect subsidiary, MHI.

### 2. Presence through MHI

■ Courts recognize two ways a plaintiff may seek to base jurisdiction under section 301 over a parent corporation on the activities of a subsidiary acknowledged to be doing business in New York. *Andros Compania*, 714 F.Supp. at 676; *Bialek v. Racal–Milgo, Inc.*, 545 F.Supp. 25, 32 (S.D. N.Y.1982). A plaintiff may show either that the subsidiary is under such parental control that the subsidiary is merely an alter-ego or "department" of the parent, *Delagi v. Volkswagenwerk AG*, 29 N.Y.2d 426, 432, 328 N.Y.S.2d 653, 657, 278 N.E.2d 895, 897 (1972), or the parent of a subsidiary who is "doing business" in New York may be also "present" for jurisdiction purposes if the subsidiary is doing "all the business which [its parent] could do were it here by its own officials." *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967).

■ Darby contends that the present case falls under the *Frummer* line of cases. In *Frummer*, the leading New York Court of Appeals decision involving foreign hotels, the court exercised jurisdiction over the Hilton Hotel in London in a case concerning the plaintiff's accident in one of the hotel's bathtubs. *Frummer*, 281 N.Y.S.2d at 42, 227 N.E.2d at 852. Hilton Hotels, a Delaware corporation, owned Hilton Hotels International, Inc., another Delaware corporation, which in turn owned the London Hilton Hotel, a British corporation. *Id.* The two Delaware corporations did business in New York and together owned the Hilton Credit Corp. which made and confirmed hotel reservations on behalf of the London Hilton. *Id.* at 44, 227 N.E.2d at 854. The court concluded that the London Hilton was doing business in New York because the Hilton Credit Corp was doing all the business that the London hotel could have done had it been present in New York. *Id.*

The court in *Frummer* distinguished the facts there from *Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958) where the hotel was required to confirm reservations in Florida and thus was found to not be "doing business" in New York. *Frummer*, 281 N.Y. S.2d at 44–45, 227 N.E.2d at 854–855. The *Frummer* Court's holding rested upon the Hilton's extensive contacts with New York as compared with *Miller* where the Florida hotel's agency services "amounted to little more than rendering telephone service and mailing brochures" for the Florida hotel and numerous other independent and unassociated Florida businesses. *Frummer*, 281 N.Y.S.2d at 45, 227 N.E.2d at 855 (citing *Miller*, 4 N.Y.2d at 481, 176 N.Y.S.2d at 322, 151 N.E.2d at 877).

Since *Frummer,* federal courts sitting in New York have engaged in hairsplitting analyses of what constitutes doing all the business the foreign corporation could have done by its own presence in the state, and the "cases are not entirely harmonious." R. Casad, *Jurisdiction in Civil Actions* 7–45 ¶ 7.02[2][e] (1983). The federal decisions applying *Frummer* to hotel jurisdiction cases have been chronologued most recently by Magistrate Grubin in an opinion adopted by Judge Keenan in *Tripmasters, Inc. v. Hyatt Int'l Corp.,* 696 F.Supp. 925 (S.D.N.Y.1988). Beginning with *Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116 (2d Cir.1967), the Second Circuit has relied upon the doing-all-the-business-the-foreign-corporation-could-do-if-it-were-here standard. *See Tripmasters,* 696 F.Supp. at 932. In the context of foreign hotel corporation defendants, application of this test has resulted in several opinions resting upon factual distinctions of ownership between the foreign corporation and the institution present in New York and the procedure of hotel booking and confirmations insofar as they reflected the agency relationship between the foreign corporation and the New York corporation.

For example, in *Welinsky v. Resort of the World D.N.V.,* 839 F.2d 928 (2d Cir. 1988) the only other Court of Appeals case since *Gelfand* to interpret *Frummer,* the Court held that plaintiff made a prima facie showing that the Maho Beach Hotel & Casino in St. Maarten was doing business in New York through its local booking agent, Sea & Sun Resorts, Ltd., an agent wholly-owned by several St. Maarten hotels including the defendant, with the ability to confirm reservations instantaneously. In reversing the dismissal of the complaint the court stated:

> Our record indicates that Maho Beach Hotel is a part owner of Sea & Sun, which markets its rooms and services and has the authority to make and confirm reservations without checking with the defendant. This goes well beyond the "mere solicitation of business" referred to in *Miller v. Surf Properties, Inc.,* 4 N.Y.2d at 481, 176 N.Y.S.2d at

322, 151 N.E.2d at 877. *See Gelfand v. Tanner,* 385 F.2d at 121.

Unlike the Maho Beach Hotel, the Meridien Copacabana does not own part of MHI, but rather benefits from its contract with SHM in that it can use MHI's toll-free reservations system. SHM does not own MHI, but instead wholly-owns SMG which in turn principally owns MHI. Consequently, the ownership relations in the present case differ significantly from those present in *Welinsky.* Additionally, while Sea & Sun could confirm without checking with the Maho Hotel, MHI's authority is, too a limited extent, more restricted. Although SHM goes through great pains to delineate the difference between recording and confirming reservations, MHI is able to confirm almost all reservations upon receiving the caller's request because the Hotel has already indicated via computer room availability. The exceptions to this confirmation policy are extremely limited in that MHI cannot confirm after 6 p.m. late arrivals and only if those are paid for by a company other than American Express.

SHM would have this court interpret the array of hotel cases as signalling that only where the reservations agent has complete authority to confirm reservations, that is, acting truly as an agent with the authority to exercise discretion on behalf of its principal, will the courts exercise jurisdiction over the foreign hotel. In support of this proposition, SHM cites *Kopolowitz v. Deepdene Hotel & Tennis Club,* 464 F.Supp. 677 (S.D.N.Y.1979) where the court stated:

> If the foreign corporation holds back from its representative the power to confirm reservations it seems that the travel service is not doing all the business which the corporation could itself do.

*Id.* at 679.

Nonetheless, this line of reasoning rests on the agency theory and the standard of whether the agent/subsidiary is doing all that the principal/parent is doing were the parent present in the state. The facts here indicate that the reservation method is not absolute, in that there are some reservations MHI may not confirm on behalf of Sisal. Nonetheless, this test is of no im-

port here because even if SHM sat in MHI's offices they could not confirm any more than does MHI. Both MHI and SHM would act on behalf of SHM's contract with Sisal. The reservation policy of Sisal and the authority it extends to MHI is immaterial in that it is the agency relationship between MHI and SHM, not that between MHI and Sisal that is at issue here. Consequently, this entire line of inquiry, devised as a measure of the agency relationship between the hotel owner and the travel booking agent as an aid in determining the "doing all the business that could be done" standard, is inapposite here where the owner is not the principal over whom jurisdiction is sought but rather a third party receiving contractual benefits from the agency relationship in question.

The most similar factual backdrop in the *Frummer* line of cases is found in *I. Oliver Engebretson v. Aruba Palm Beach Hotel & Casino,* 587 F.Supp. 844 (S.D.N.Y.1984). There the foreign corporation had a contractual arrangement with an independent local travel agent who had the power to make and confirm reservations for a foreign hotel owned by the foreign corporation. *Id.* at 850. The foreign corporation did not have nor ever maintained any offices or employees in New York, any real property or assets in New York, nor a New York telephone number. *Id.* at 846. Nonetheless, the court in *Aruba* found *in personam* jurisdiction because the presence of any agent in New York with the undisputed authority to bind the foreign principal by confirming reservations was sufficient to warrant a finding that the Aruba defendants were "doing business" in New York. *Id.* at 850. Common ownership is not required between the foreign corporation and the New York agent. *See id.*

These facts are still distinguishable from the present case in that SHM does not own Sisal, like the Aruven owned the Aruba Hotel. Nonetheless, the ownership relationship between Aruven and Aruba was not at issue. Instead the non-ownership relationship between these Aruba defendants and the independent reservation agent in New York was at issue. Here, although SHM does not own Sisal, the con-

tractual relationship between the two affords Sisal the use of the Meridien name and allows Sisal to benefit from SHM's access to contract away the use of MHI's telephone reservations system. Consequently, whether or not MHI is independent of SHM, a disputed factor but assumed true for the purposes of this discussion, a court does not necessarily forfeit jurisdiction over the independent foreign corporation.

Subjecting the independent relationship between MHI and SHM to the test used in *Frummer* the question becomes whether or not SHM could do any more on behalf of Sisal than MHI does on behalf of Sisal pursuant to both Sisal's contract with SHM and MHI's relationship with SHM. Even though SHM does not directly own MHI, it could do no more for Sisal than the recording, arguably confirming reservation procedure conducted by MHI. Consequently, MHI meets the test set forth in *Frummer* and performs "service beyond 'mere solicitation'" to the extent that it confirms or "records" any reservations made by callers on the 1–800 telephone number pursuant to its contract with SHM to promote Meridian Hotels, and to the extent it aids SHM to fulfill its obligations pursuant to the SHM—Sisal contract. *See Thompson Medical Company, Inc. v. National Center of Nutrition, Inc.,* 718 F.Supp. 252, 254 (S.D.N.Y.1989) (once solicitation is found, little more necessary). Although these recordings or confirmations are on behalf of Sisal, they are on behalf of Sisal pursuant to a contractual relationship between Sisal and SHM which allows Sisal the use of SHM, exclusive ownership of the name "Meridien." If SHM did not have MHI to answer the 1–800 number, it would have to be there itself or substitute another representative voice to meet its contractual bargain with Sisal in order to afford Sisal use of New York-based booking representation. MHI solicits on behalf of Meridien chains, a benefit that profits the owners, but also accrues to SHM in that it fulfills SHM's contractual obligation.

Assuming, momentarily, the agency relationship no longer existed between MHI

and SHM because of the alleged transfer to SMG, jurisdiction may still exist. In addition to indirect ownership which in and of itself may not confer jurisdiction, *see Saraceno v. S.C. Johnson & Son, Inc.*, 83 F.R.D. 65, 67 (S.D.N.Y.1979), the Meridien chain reveals indicia of a unified corporate enterprise [2]—including an integrated promotion system and the shared use of a trademark designed to induce a promotional/reputational benefit—which may give rise to a finding of "control" for jurisdictional purposes.[3] *Dickson v. Hertz Corp.*, 559 F.Supp 1169, 1176 (D.V.I.1983); *see also Bialek*, 545 F.Supp. at 32 (tightly-knit system of common-owned entities where New York organization performs all the business services for entity could perform). An "alleged agent must have acted in this state for the benefit of and with the knowledge and consent of the non-resident and the non-resident must exercises some element of control over the agent." *Selman v. Harvard Medical School*, 494 F.Supp. 603, 611 (S.D.N.Y.1980) (quoting *Louis Marx & Co. v. Fuji Seiko Co.*, 453 F.Supp. 385, 390 (S.D.N.Y.1978), *aff'd*, 636 F.2d 1204 (2d Cir.1980)); *accord H. Heller & Co. v. Novacor Chemicals Ltd.*, 726 F.Supp. 49, 55 (S.D.N.Y.1988). Moreover, based on the sole letter submitted with respect to this issue, there may be jurisdiction to the extent that SMG is completely controlled by the ownership and management of SHM. *See Tripmasters, Inc.*, 696 F.Supp. at 937–38 (S.D.N.Y.1988).

Even disregarding MHI's original articles of incorporation, SHM must still have some business relationship with MHI that insures SHM's ability to contract with independent foreign hotel owners who use the Meridien name, held by SHM, for a provision enabling the foreign owner of a Meridien hotel to use the services provided by MHI. Although MHI may now be a completely separate corporate entity, MHI pursuant to the promotional agreement with SHM's trademark acts as the United States department of promotional services for SHM, at least with respect to Sisal. Not only does the agreement reveal this, but also SHM's continued ability to make available MHI's services to independently owned foreign hotels, such as Sisal, that use the Meridien name. Consequently, although SHM labels MHI's activities as purely ministerial in that MHI "merely records" caller requests this argument is misleading. MHI's activities on behalf of Sisal may be merely "ministerial" but MHI's activities on behalf of SHM are far from any such characterization. *See Arrow Trading Co. v. Sanyei Corp. (Hong Kong)*, 576 F.Supp. 67, 70 (S.D.N.Y.1983).

*3. Due Process*

 The conclusion that SHM is subject to statutory long-arm jurisdiction necessitates an inquiry of whether the constitutional requisites to exercise this jurisdiction are present. Due process requires that a district court seeking to exercise personal jurisdiction over a nonresident defendant must conclude that the nonresident defendant has purposefully established "minimum contact" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). The minimum contacts of a nonresident defendant with the forum state may support either "specific" or "general" jurisdiction. *See generally* Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1136–63 (1966) (discussing distinction). In this case, Darby has presented a prima facie case for jurisdiction over SHM inasmuch as Darby has alleged that SHM is involved in an alleged tort committed, at least in part, through SHM's continuous and systematic

---

**2.** The record, however, is too incomplete to establish all of the factors set forth in *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft*, 751 F.2d 117, 120–22 (2d Cir.1984).

**3.** The agency determinations made for jurisdictional inquiries are completely distinct from the inquiry that would govern the merits of a corporate piercing analysis for the underlying cause of action. *See Andros Compania*, 714 F.Supp. at 676 n. 10.

presence through MHI in New York. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984). This continuous presence through MHI, of a booking agent to satisfy SHM's contractual obligations, represents the purposeful availment of SHM of "the benefits and protection of the forum state's laws." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985). *See also I. Oliver Engebretson,* 587 F.Supp. at 851 (systematic course of dealings through local agents satisfies due process).

Presuming the institutional independence of the parent and the subsidiary does not defeat the power to assert personal jurisdiction. *Donatelli v. National Hockey League,* 893 F.2d 459, 465 (1st Cir.1990). Courts will look at the nature of the interrelationship between the two and tend to find that there is something more than presence in the corporate family before a court will exercise jurisdiction. *Id.* at 465–66. An agency relationship or a finding of parental control beyond that inherent in a family relationship may support that exercise. *See id.* at 466. "Since the essence of personal jurisdiction is to bring responsible parties before the court, a corporation which is actually responsible for its subsidiary's decision to undertake instate activities should, in all fairness, be within the state courts' jurisdictional reach." *Id.* The corporation need not ever step foot upon the forum state's soil. *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 ("we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction ..."). To the extent MHI makes reservations or records them on behalf of Sisal, it does so pursuant to a contract between SHM and Sisal. Consequently, with respect to the continuous solicitations, information and recording activities of MHI, including the Darby reservation process, these activities accruing to the benefit of Sisal was at the contractual behest of SHM and the relationship between MHI and SHM that permitted satisfaction of that contractual relationship.

In addition to finding minimum contacts sufficient to support an exercise of personal jurisdiction in New York over SHM, it is necessary for this Court to determine whether it is fair to subject SHM to a suit in New York. Pursuant to the factors set forth for consideration in *Asahi Metal Ind. Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the exercises of personal jurisdiction over SHM would be constitutionally permissible. Not only is the burden on SHM a corporation engaged in international trade minimal, the New York plaintiff has an interest in obtaining relief, and most importantly, the forum state has a significant interest in redressing any alleged fraudulent activities in this state that allegedly are in some way ascribed to SHM.

*Conclusion*

For the foregoing reasons, the motion to dismiss is denied with leave to renew after discovery and in the event of an additional submission.

It is so ordered.