**TUXXEDO NETWORK, INC., Plaintiff,**

v.

**HUGHES COMMUNICATIONS CARRIER SERVICES, INC., Defendant.**

**No. 90 Civ. 2547 (MGC).**

United States District Court, S.D. New York.

Dec. 28, 1990.

Pryor, Cashman, Sherman & Flynn by Charles B. McKenna, Donald S. Zakarin, New York City, for plaintiff.

Kirkland & Ellis by Francis M. Holozubiec, Daniel J. Fetterman, New York City, for defendant.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff, a Delaware corporation with its principal place of business in New York, is a national satellite television broadcaster. Defendant, Hughes Communications Carrier Services ("Hughes CCS"), a California corporation with its principal place of business in California, leases transponder capacity on satellites for the broadcast of television signals.

Hughes CCS is a subsidiary of Hughes Communications, Inc. ("Hughes CI"), which operates a broadcasting system that it describes as a "network of satellites and control stations." Younger Affidavit, Exhibit B. This network includes three "Galaxy" satellites and two telemetry, tracking, and control stations, one in Fillmore, California, and the other in Brooklyn, New York. Various elements and operations of the network are owned or performed by subsidiaries of Hughes CI. Hughes CCS performs the role of the lessor of the capacity of the network's Galaxy II satellite.

Plaintiff and Hughes CCS entered into an agreement by which defendant leased to plaintiff transponder capacity on the Galaxy II satellite, which is owned by Hughes Communications Galaxy, Inc., another subsidiary of Hughes CI. The agreement allows plaintiff to beam its program transmissions up to the satellite, which then scatters the transmissions across the country. Plaintiff arranges for viewers to receive the signal either directly, through home satellite dishes, or through intermediaries such as cable television companies and hotels. Plaintiff transmitted its signal,

via satellite, to most states, including New York.

The Galaxy II satellite is in a geosynchronous orbit, 22,000 miles above the equator at 74 degrees west longitude, approximately due south of New York City. In order for Tuxxedo's signal to be transmitted as promised in the agreement, the satellite must remain in the same position relative to the earth as the earth turns. The satellite's position is tracked and maintained through the network's two telemetry, tracking, and control centers in California and Brooklyn, New York. The Brooklyn facility is owned by National Satellite Services, Inc. ("NSS"), another subsidiary of Hughes CI.

The parties disagree about the nature of the relationship between Hughes CCS and NSS. Hughes CCS asserts that NSS is an independent corporation. Jeffrey Younger, plaintiff's president, states in his affidavit that he "had been told by [Hughes CCS's] employees on numerous occasions that it maintained a primary telemetry tracking and control center in Brooklyn, New York and, in fact, [he] had in the past, placed calls to the Brooklyn facility." Younger Affidavit, pp. 3–4. Younger's affidavit annexes a page from the Brooklyn telephone directory with a listing for "Hughes Communications" at the address of the Brooklyn facility. *Id.*, Exhibit E. Younger's affidavit also annexes a Hughes CI publication explaining the network's operation. The publication describes the system as follows:

> The Operations Control Center (OCC), located at Hughes Communications' headquarters in El Segundo, Calif. (near Los Angeles), is the focal point for the complex coordination and integration of the Galaxy network's space and terrestrial segments. Satellite controllers in the OCC communicate with the Galaxy satellites via our telemetry, tracking and control (TT & C) stations in Brooklyn, N.Y. and Fillmore, Calif. Control Center engineers monitor the network of satellites and control stations 24 hours a day and perform subsystem tests and station-keeping functions."

Younger Affidavit, Exhibit B.

On April 11, 1990, Hughes CCS notified plaintiff that it was terminating the agreement immediately because it believed that plaintiff had committed a material breach of Section 9 of the agreement. Section 9 of the agreement provides:

> *Governmental Regulations.* HCCS [defendant] and User [plaintiff] will each comply in all material respects with all government regulations applicable to either of them regarding the operation of the Satellite and its use of the Transponder Capacity.

Defendant's termination letter stated that "it had been brought to [defendant's] attention" that plaintiff had been using the satellite to transmit programming that was "in violation of the Alabama Anti–Obscenity Enforcement Act." Plaintiff alleges that the person who told defendant that the programming violated Alabama's obscenity statute was Jimmy Evans, "a District Attorney in Montgomery County, Alabama." The termination of the agreement made it impossible for plaintiff to transmit its programming to its customers.

Plaintiff sued defendant for breach of contract, violation of 42 U.S.C. § 1983 by abridging its First Amendment rights under color of state law, and violation of 47 U.S.C. §§ 201 and 202. Defendant moves to dismiss the complaint for lack of personal jurisdiction. For the reasons discussed below, defendant's motion is denied.

## DISCUSSION

■ Plaintiff argues that this court has personal jurisdiction over defendant under sections 301, 302(a)(1), and 302(a)(3) of the New York Civil Practice Law and Rules ("CPLR").

Plaintiff bears the burden of establishing the court's personal jurisdiction over defendant. *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986); *Alexander & Alexander v. Donald F. Muldoon & Co.*, 685 F.Supp. 346, 351–352 (S.D.N.Y. 1988). Because I have not held an evidentiary hearing, plaintiff need make only a

*prima facie* showing of jurisdiction. *Id.* All pleadings and affidavits must be construed in the light most favorable to plaintiff and all doubts resolved in its favor. *Id.; Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

### "Doing business" in New York

In order to be subject to personal jurisdiction under CPLR § 301, a non-resident defendant must be "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 852–53, *cert. denied* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). Plaintiff argues that defendant is doing business in New York through NSS because NSS's telemetry, tracking, and control services are necessary to defendant's conduct of its business. Plaintiff contends that if these essential services were not supplied by NSS in New York, they would have to be performed by defendant itself.

Whether NSS's presence in New York may be attributed to defendant depends on the nature of NSS's services and the nature of the relationship between NSS and defendant. A foreign corporation may be subject to jurisdiction in New York under § 301 when a separate corporation, acting with its authority and for its substantial benefit, carries out activities in New York that are more than "mere solicitation" and are

> sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.

*Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116, 121 (2d Cir.1967), *cert. denied,* 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968). It is undisputed that the services continuously performed by NSS are an essential part of the conduct of defendant's business. Defendant concedes that if NSS did not perform its services for defendant in New York, defendant would undertake

to have substantially similar services performed by its own employees. Nevertheless, defendant argues that it is not subject to personal jurisdiction in New York because NSS is not its agent and because the services provided by NSS do not have to be performed in New York.

The relationship between defendant and NSS is sufficient to create personal jurisdiction over defendant. A New York representative of a non-resident defendant need not be an official agent for its activities to subject the defendant to personal jurisdiction in New York. *Gelfand,* 385 F.2d at 119, 121 (non-resident defendant "doing business" under § 301 through activities of independent contractor in New York). An analysis of the facts of *Gelfand* and *Frummer v. Hilton Hotels* shows that the activities of a New York representative may be attributed to a non-resident defendant if the representative acts with the defendant's authority and for its substantial benefit. *See Gelfand* 385 F.2d 116; *Frummer,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851. Plaintiff has made a *prima facie* showing that NSS acts with defendant's authority and for its substantial benefit. Defendant conceded at oral argument that either defendant itself or Hughes CI on its behalf contracted with NSS to perform the tracking, telemetry, and control functions necessary to the proper operation and use of the satellite. Defendant's employees told plaintiff's representative that the Brooklyn facility is maintained by defendant, from which the inference is reasonable that the facility is maintained on defendant's behalf and for its benefit. In addition, the corporate affiliation between NSS and defendant gives rise to a valid inference that, even in the absence of an express agency agreement, NSS has broad authority to act on defendant's behalf. *See Frummer,* 19 N.Y.2d at 538, 281 N.Y.S.2d at 45, 227 N.E.2d at 854.

Defendant argues that NSS's activities in New York on its behalf may not be attributed to it because these services could have been performed in another state. In support of this position, defendant relies on three words in a sentence in *Pneuma–Flo Systems, Inc. v. Universal Machinery*

**518**

*Corp.,* 454 F.Supp. 858 (S.D.N.Y.1978), to the effect that the activities performed on behalf of a non-resident must be so significant that, if they were not performed by a representative, the non-resident "would have to dispatch its own employees *to this State....*" *Id.* at 865 (emphasis added). Defendant's argument is not persuasive. In *Pneuma–Flo,* the non-resident defendant was sued by its own New York representative. The court rejected personal jurisdiction over the non-resident because the acts of a representative suing its non-resident principal cannot be attributed to the principal for the purpose of establishing personal jurisdiction. *Pneuma–Flo,* 454 F.Supp. at 862–864; *see Haar v. Armendaris Corp.,* 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973), *rev'g on dissent below* 40 A.D.2d 769, 337 N.Y.S.2d 285 (1st Dept.1972). Thus, the language on which defendant relies is dictum. In any event, the Second Circuit's controlling decision in *Gelfand* does not require that the services performed by a New York representative be such that they cannot be performed outside of New York. *Gelfand,* 385 F.2d at 121. There is no sound reason for such a requirement. If defendant's own employees were tracking the satellite from New York, the fact that defendant could have chosen to conduct the tracking aspect of its business in another state would not negate its "presence" in New York. The rule should be no different because defendant is "present" in New York through a representative. As long as services which would otherwise have to be performed by defendant itself are performed with defendant's authority and for its substantial benefit by a representative in New York, the representative's activities may be attributed to defendant for the purpose of personal jurisdiction.

Finally, requiring Hughes CCS to defend this suit in New York does not "offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

## CONCLUSION

Defendant's motion to dismiss the complaint for lack of personal jurisdiction is denied. Since I have concluded that this court has personal jurisdiction over defendant under CPLR § 301 because defendant is doing business in New York through a representative, I do not reach the other grounds upon which plaintiff argues that personal jurisdiction exists.

SO ORDERED.