**In the Matter of the Application for an Order Quashing a December 19, 1997 Deposition Subpoena of**

**PRICE WATERHOUSE LLP, a limited liability partnership registered under the laws of the State of Delaware, and Price Waterhouse United Kingdom Firm, a partnership organized under the laws of England, United Kingdom, Petitioners,**

v.

**FIRST AMERICAN CORPORATION and First American Bankshares, Inc., Respondents.**

**No. M8–85 (RWS).**

United States District Court, S.D. New York.

Aug. 12, 1998.

---

Debevoise & Plimpton, New York City, by Edwin G. Schallert, Barton Legum, of counsel, for Petitioner Price Waterhouse LLP.

Dechert Price & Rhoads, New York City, by James E. Tolan, William K. Dodds, Peter L. Critchell, Amianna Stovall, of counsel, for Petitioner Price Waterhouse United Kingdom Firm.

Jones, Day, Reavis & Pogue, New York City, by Steven C. Bennett, of counsel, for Respondents.

*OPINION*

SWEET, District Judge.

Price Waterhouse–United Kingdom ("PW–UK") and Price Waterhouse–United States ("PW–US") (collectively, the "Movants") have moved pursuant to Rule 45 of the Federal Rules of Civil Procedure for an order quashing a Rule 30(b)(6) subpoena served by First American Corporation and First American Bankshares, Inc. ("FAC") on PW–US as agent for PW–UK and on Colin McKay, a PW–UK partner residing in New York, on the grounds that this Court lacks *in personam* jurisdiction over PW–UK, that Rule 45 forbids compelling a witness to travel more than 100 miles to testify as a nonparty in a deposition, and that enforcement of the subpoena would violate the principles of international comity. For the reasons set forth below, the motion to quash is granted.

*Parties*

FAC is a Virginia corporation with its principal place of business in Washington D.C. During the events which led to the DC Action (defined below), FAC was a privately held bank holding company wholly owned by Credit and Commerce American Holdings Co. N.V. ("CCAH").

PW–US is a registered limited liability partnership of independent accountants organized under Delaware law that engages in the practice of accountancy in the United States. Its principal office is in New York.

PW–UK is an English partnership set up under the Partnership Act (1890) of England. It is located and operates principally in the United Kingdom.

Colin McKay ("McKay") is a partner of PW–UK who is currently residing in New York.

*Facts and Prior Proceedings*

The facts and prior proceedings were set forth in detail in two prior opinions, familiarity with which is assumed. *See First American Corp. v. Price Waterhouse LLP*, 988 F.Supp. 353 (S.D.N.Y.1997) [hereinafter *First American I*]; *First American Corp. v. Price Waterhouse LLP*, No. M8–85, 1998 WL 148421 (S.D.N.Y. Mar.27, 1998) [hereinafter *First American II*]. Facts relevant to the instant motion are set forth below.

FAC is plaintiff in an action in the District Court for the District of Columbia, captioned *First American Corp., et al. v. Sheikh Zayed Bin Sultan Al-Nahyan*, 2 F.Supp.2d 58 (D.D.C. 1998) (JUG/PJA) (the "DC Action"). The DC Action is just one proceeding of many spawned by the largest bank fraud in world history perpetrated by the Bank of Credit and Commerce International ("BCCI").

The Price Waterhouse firms were auditors of BCCI (Overseas) Limited, and the efforts of separate Price Waterhouse firms were coordinated by PW–UK. As part of its coordination of worldwide audits, PW–UK would

instruct and direct the efforts of accounting firms in those territories where BCCI subsidiaries carried on material business. In the United States, the appointed accounting firm was PW–US.

In 1996, FAC served a document subpoena and three deposition subpoenas on PW–US. Pursuant to those subpoenas, PW–US produced over 33,000 pages of documents and three of its partners or principals for deposition.

In August 1997, FAC served a new subpoena on PW–US and on a partner of PW–UK who is currently working at PW–US. The subpoena requested documents from PW–UK related to BCCI and any services performed by Price Waterhouse for BCCI. PW–US objected to this request on the grounds that, *inter alia*, PW–US had no control over documents in PW–UK's possession, and that PW–US was not the appropriate vehicle for serving, obtaining jurisdiction over, and/or taking discovery from PW–UK because no jurisdiction was established by serving PW–US.

On September 30, 1997, FAC brought an application by *ex parte* order to show cause, asserting that service of the subpoena on PW–US provided jurisdiction over PW–UK, based on the working relationship between the two partnerships. The petition was heard in Part I before this Court on October 28, 1997. By opinion dated December 17, 1997, the Court found that jurisdiction existed over PW–UK on the grounds that PW–UK had done business in New York to a degree sufficient to satisfy § 301 of the New York Civil Procedure Law and Rules, when PW–UK conducted audits of BCCI's New York branch through PW–US. The Court found that the amount of control exerted over PW–US by PW–UK satisfied the standard set by *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 41 (1967), which stands for the proposition that a foreign corporation may be found to be doing business in New York if a local affiliate of the foreign corporation "does all the business which [the other corporation] could do were it here by its own officials." *First American I,* 988 F.Supp. at

362–63 (citing *Frummer,* 19 N.Y.2d at 537, 227 N.E.2d at 854, 281 N.Y.S.2d at 44).

On December 19, 1997, FAC served on employees of the legal department of PW–US a deposition subpoena addressed to PW–US "as Agent for Price Waterhouse (U.K.firm)" (the "December Subpoena"). The December Subpoena requested designation of officers, directors, or managing agents capable of testifying on various subjects relating to PW–UK's dealings with BCCI, including the nature of the relationships between BCCI and the CCAH nominees, the identity of those who knew of the illegal relationships, and when, how, and what these persons learned of them.

On January 8, 1998, PW–UK and PW–US filed a motion for reargument of *First American I,* 988 F.Supp. at 353, claiming (1) that the Court committed clear error in holding that the PW–US audit of BCCI, performed at the direction of PW–UK, established an agency-like relationship sufficient to satisfy the standard for imposing personal jurisdiction as set forth by the New York Court of Appeals in *Frummer* and (2) that the Court overlooked the requirement in N.Y. C.P.L.R. § 301 that the foreign corporation must be doing business at the time of the summons and complaint rather than at the time of the occurrence giving rise to the action. By opinion dated March 27, 1998, the motion for reconsideration was granted, but the underlying motion to reverse the order to compel discovery of documents was denied. This Court found that the Movants' first ground for reconsideration failed to set forth any overlooked legal authority. As to the second ground, sufficient facts had been presented at a prior hearing to establish that PW–UK was "doing business" through its relationship with PW–US at the jurisdictionally significant time. *See First American II,* 1998 WL 148421 at *2–*3.

On January 13, 1998, FAC served a second deposition subpoena addressed to PW–US "as Agent for Price Waterhouse (U.K.firm)," dated January 15, 1998, which was substantially identical to the December Subpoena (the "January Subpoena"). Additionally, FAC served another substantially identical subpoena on "Price Waterhouse (U.K.firm)

c/o Colin McKay," dated January 21, 1998 (the "McKay Subpoena," together with the December and January Subpoenas, the "Subpoena").

On January 14, 1998, PW–UK and PW–US filed the motion to quash the December Subpoena. On January 26, 1998, the parties stipulated that the motion to quash the December Subpoena would be deemed to be a motion to quash the January and McKay Subpoenas as well. The instant motion was deemed fully submitted on May 14, 1998.

On April 3, 1998, PW–UK was found to be in contempt of court for its failure to comply with the document subpoena enforced by *First American I* and *First American II.* PW–UK was ordered to pay $1,000 per day as a sanction, but pursuant to stipulation by the parties, the sanction was stayed pending the appeal of *First American I, First American II,* and the contempt order to the Second Circuit.

On June 23, 1998, the Second Circuit affirmed *First American I, First American II,* and the contempt order.

On July 2, 1998, the sanction for noncompliance of the document subpoena was increased to $5,000 per day.

The Second Circuit issued its opinion affirming the decisions of this Court on July 14, 1998, where it found that enforcement of the document subpoena against PW–UK was valid because (1) PW–UK is subject to jurisdiction in New York since FAC validly served Clive D.J. Newton, a PW–UK partner in New York, under N.Y. C.P.L.R. § 310(a); (2) due process was satisfied and PW–UK had "clear notice that it risked suit in New York when it sent its partner to work at the New York office of PW–US"; (3) PW–UK's contention as to the primacy of the Hague Evidence Convention (the "Hague Convention") was unpersuasive as the circumstances of the case provided no basis for preferring the Hague Convention over Rule 45; and (4) this Court did not abuse its discretion in determining that the document subpoena was not overbroad. *See First American Corp. v. Price Waterhouse LLP,* 154 F.3d 16 (2d Cir. 1998) [hereinafter *First American III* ].

## Discussion

### I. Personal Jurisdiction, Due Process, and the Hague Convention

The Second Circuit's findings in *First American III,* as well as this Court's findings in *First American I* and *First American II,* are dispositive of many of the issues presented in this motion. Personal jurisdiction, due process, and the Hague Convention do not constitute bars to discovery by deposition of PW–UK.

According to the Movants, this Court is without *in personam* jurisdiction over PW–UK because PW–US is not its agent, as PW–US has no power to bind PW–UK and as PW–UK received no income from the accounting services that PW–US provided to BCCI's United States agencies. However, this contention ignores the holding of *First American II,* which rejected the proposition that a local affiliate must also have the power to bind the foreign corporation in order for personal jurisdiction to exist. *See First American II,* 1998 WL 148421, at *2; *see also Darby v. Compagnie Nat'l Air France,* 735 F.Supp. 555, 563–64 (S.D.N.Y.1990).

In *First American I* and *First American II,* PW–UK was found to be doing business through the affiliated partnership of PW–US, acting as agent. *See First American II,* 1998 WL 148421, at *2–*3; *First American I,* 988 F.Supp. at 362–63; *see also Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116, 121 (2d Cir.1967) (stating that "a foreign corporation is doing business in New York ... when its New York representative provides services beyond mere solicitation and [which] are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services"); *Tuxxedo Network v. Hughes Communications Carrier,* 753 F.Supp. 514, 517 (S.D.N.Y.1990) (noting that the resident corporation acting as an agent need not bear an official agency relationship to the foreign corporation); *Frummer,* 19 N.Y.2d at 537, 227 N.E.2d at 854, 281 N.Y.S.2d at 44 (holding that an agency relationship supporting jurisdiction was established where one corporation "does all the

business which [the other corporation] could do were it here by its own officials").

■ Aside from personal jurisdiction by reason of "doing business" through PW–US as agent within the meaning of C.P.L.R. § 301, jurisdiction exists under § 310(a), which provides that "[p]ersonal service upon persons conducting a business as a partnership may be made by personally serving the summons upon any one of them." N.Y. C.P.L.R. § 310(a). As the Second Circuit observed, personal jurisdiction is achieved over the partnership upon valid service on one partner within the state. *See First American III*, 154 F.3d at 19 (*citing Cooper v. Lubell*, No. 83 Civ. 2506, 1987 WL 14468, at *2 (S.D.N.Y. July 13, 1987) (stating that service upon a partner confers personal jurisdiction over each partner served as well as the partnership)).

The McKay Subpoena was served on McKay, who is a partner of PW–UK and a resident of New York. This suffices to bring PW–UK within the Court's jurisdiction.

Regarding due process, the Movants urge that New York is a manifestly burdensome, inconvenient, and unreasonable forum such that due process mandates that the Subpoena be quashed. However, the Second Circuit was "satisfied that in light of *Burnham v. Superior Court*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990), the assertion of personal jurisdiction over PW–UK based upon service pursuant to C.P.L.R. 310 satisfies due process." *Id.* at 20. As explained by the Second Circuit, the *Burnham* Court rejected a due process challenge to the assertion of personal jurisdiction over a New Jersey resident who was in California temporarily in connection with activities unrelated to the suit. *See id.* (*citing Burnham*, 495 U.S. at 628, 110 S.Ct. 2105; *id.* at 640, 110 S.Ct. 2105 (Brennan, J., concurring in judgment); *id.* (Stevens, J., concurring in judgment)).

Moreover, the Second Circuit, in affirming the enforcement of the document subpoena, rejected PW–UK's assertion that *Burnham* should be distinguished because of PW–UK's

status as a non-U.S. citizen and a nonparty to the underlying suit, stating that,

a person who is subject to *liability* by service of process far from home may have better cause to complain of an outrage to fair play than one similarly situated who is merely called upon to supply documents or testimony. Further, although a non-party, PW–UK's position as auditor gave it unique access to documents that may be critical in unraveling a bank fraud of unprecedented scale and, perhaps, a correspondingly unique responsibility. At the risk of sounding naive, we think PW–UK could be expected to feel a professional commitment to clearing up the financial frauds that were committed by PW–UK's client and that presumably escaped PW–UK's scrutiny.

*Id.* at 20.

The *First American III* court was confident that,

PW–UK knew, or should have known, that by seconding one of its partners to the New York office of an affiliate, PW–UK was risking exposure to personal jurisdiction in New York [and that] [u]nder the circumstances, due process is not offended by the enforcement of the Rule 45 subpoena [for documents] against PW–UK.

*Id.* at 20–21 (*citing Burnham*, 495 U.S. at 635, 110 S.Ct. 2105 (noting that the history of transient jurisdiction provides a defendant voluntarily present in a particular state with " 'clear notice that he is subject to suit' in the forum") (*quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (alterations omitted))).[1]

Furthermore, considerations of comity and Hague Convention issues as they relate to discovery from nonparty witnesses were dealt with in length both in *First American III*, 154 F.3d at 20–23, and *First American I*, 988 F.Supp. at 364–66, when addressing enforcement of the document subpoena against PW–UK, and found to favor FAC's use of Rule 45 for facilitating discovery.

---

**1.** Alternatively, the due process "minimal contacts" test is satisfied by PW–UK's purposeful activities in New York through PW–US, acting as PW–UK's agent. *See First American I*, 988 F.Supp. at 363.

If the issue presented by the motion at bar related to a subpoena requiring the production of documents, as did the subpoena previously enforced by this Court—the enforcement of which the Second Circuit affirmed—the inquiry would end here. Because personal jurisdiction has been established over PW–UK and because due process and comity have not been offended, the motion to quash would be denied. After all,

> Paragraph (a)(2) [of Rule 45] makes clear that the person subject to the subpoena is required to produce materials in that person's control whether or not the materials are located within the district or within the territory within which the subpoena can be served. *The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34.*

Fed.R.Civ.P. 45 advisory committee's note (emphasis added).

By contrast, Rule 45 draws a distinction between discovery by deposition of parties and nonparties. *See* Fed.R.Civ.P. 45(c)(3)(A)(ii). Thus, beyond the finding of personal jurisdiction, the territorial limitation directed at nonparties provided by Rule 45 must be addressed in determining whether the Subpoena must be quashed.

## II. *Territorial Limitation of Rule 45(c)(3)(A)(ii) on Nonparty Deponents*

■ A nonparty entity may be subject to a subpoena for deposition testimony in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, which provides a method for taking the deposition of a corporation, partnership, or other association.[2] Under the Rule, the party seeking discovery need only name the partnership or similar entity as the deponent. The burden then

falls on the named entity to "designate one or more officers, directors, or managing agents, or other persons" to testify on its behalf, and these persons must testify as to the matters known to the entity. Fed. R.Civ.P. 30(b)(6). Rule 30(b)(6) was drafted as the primary vehicle for parties to depose a corporation or partnership. *See* 8A Charles A. Wright et al., *Federal Practice and Procedure* § 2103, at 34 (2d ed.1994) (stating that the Rule "now makes it possible to direct a subpoena *ad testificandum* to a corporation"). Rule 30(b)(6) was designed to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." Fed.R.Civ.P. 30(b)(6) advisory committee's note (1970 amendment).

This Rule, by its language, is applicable to both parties and nonparties. As stated in Rule 30(a)(1), the "attendance of witnesses may be compelled by subpoena as provided in Rule 45." Before deposition testimony may be procured from PW–UK, a nonparty witness, a subpoena must thus be issued in accordance with Rule 45. Rule 45 requires a court to quash or modify a subpoena if the subpoena "requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person." Fed.R.Civ.P. 45(c)(3)(A)(ii).

According to FAC, the 100–mile provision does not prohibit this Subpoena issued under Rule 30(b)(6) because the witness is PW–UK, a partnership doing business in the State of New York through PW–US. The witness does not have to travel 100 miles because it is present in New York. FAC's contention, however, as PW–UK points out, fails to comport with the plain language of Rule 45(c).

---

**2.** Rule 30(b)(6) states:

A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or an association ... and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other per-

sons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization.

Whether the "person" for purposes of Rules 45 and 30(b)(6) is the entity, PW–UK, or the actual witnesses, knowledgeable partners, or employees or PW–UK, "the place" where PW–UK and its partners and employees "reside," are "employed," or "regularly transact[ ] business in person" is not New York. The plain language of the Rule's requirement that the business be transacted "in person" by the witness excludes instances, where, as FAC contends here, the witness, PW–UK, admittedly does not transact business "in person" but through an agent.[3]

Critical to the instant inquiry is that FAC does not dispute the fact that the Subpoena would require PW–UK to produce at the offices of FAC's counsel in New York PW–UK's partners or employees who reside, are employed, and regularly transact business more than 100 miles beyond the Rule 45 territorial boundaries of this Court—*i.e.*, in England. FAC does not contend that either PW–UK or any PW–UK partner/employee with knowledge of the matters specified in the Subpoena resides or is employed in New York. Nor does FAC contend that PW–UK itself regularly transacts business in New York.

Thus if the deponent is PW–UK in that the territorial limitations apply only to it and not its partners or employees, Rule 45(c) requires the Subpoena to be quashed because it does not regularly transact business itself in New York; if, on the other hand, the 100–mile limitation applies to the actual individuals who would be forced to travel over 100 miles to be deposed, again the Subpoena must be quashed.

Logic dictates that in the instant case the limitation applies to the actual individuals for two reasons. First, PW–UK is not a corporation but a partnership. Unlike a corporation, a partnership has no separate existence or identity of its own. *See First American*

III, 154 F.3d at 19. Second, Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify, not the legal entity for whom those human beings work. That the Rule focuses on the individual is supported by the fact that there is no such limitation regarding production by a nonparty of documents. Moreover, this focus is apparent both from the Rule's reference to "a person who is not a party *or an officer of a party* " and the "in person" requirement discussed above. Fed.R.Civ.P. 45(c)(3)(A)(ii) (emphasis added).

Thus this Court in *St. Paul Fire & Marine Ins. Co. v. Royal Ins. Co.*, No. 91 Civ. 6151, 1993 WL 267347, at *1–*2 (S.D.N.Y. July 12, 1993), quashed a New York subpoena served on an employee of the defendant corporation because he was not an officer of the corporation and because the subpoena required him to travel more than 100 miles from his home and work at the Atlanta branch of the corporation.[4]

Additionally, in *Stanford v. Kuwait Airlines Corp.*, No. 85 Civ. 0477, 1987 WL 26829, at *3 (S.D.N.Y. Nov.25, 1987), for example, this Court denied a motion to compel nonresident witnesses who were employees of a foreign nonparty corporation doing business in New York to attend depositions in New York, stating that "case law and logic dictate that the [territorial] proscriptions of [Rule 45] also apply to individual employees who are the subject of a subpoena served upon a corporation."

FAC suggests that interpreting Rule 30(b)(6) in conformance with Rule 45 in situations where Rule 45(c) causes a conflict in permitting discovery creates a loophole for any out-of-state corporation doing business in New York. Therefore, FAC maintains that Rule 30(b)(6) should trump the provisions of Rule 45(c). However, allowing a subpoena served pursuant to Rule 30(b)(6) to evade the

---

**3.** Finding personal jurisdiction due to an agency-like relationship under *Frummer* does not change this conclusion. A finding that an entity "regularly transacts business in person" is not required for conferring personal jurisdiction on an entity pursuant to a "doing business through an agent" test. *See generally First American II*, 1998 WL 148421, at *2; *First American I*, 988 F.Supp. at 362–63. It is useful to note that this

Court concluded that PW–UK was not "itself" doing business in New York, but that it was doing business through PW–US's agency. *Id.* at 362.

**4.** Note that Rule 45(c)(3)(A)(ii) treats a person who is an employee and not an officer of a party as it does a nonparty witness.

proscriptions of Rule 45(c) would render Rule 45 surplusage and subject nonparties to the same level of burdensome discovery that can be imposed upon a party.

FAC's contention that jurisdiction over PW–UK effectively eliminates the 100–mile limitation not only ignores the language of Rules 30(a)(1) and 45(c), but it is also inconsistent with the central goal of Rule 45: to prevent nonparty witnesses from being subjected to excessive discovery burdens. *See e.g., St. Paul Fire & Marine Ins. Co.,* 1993 WL 267347, at *1–*2. The Rule establishes a simple mechanism for protecting nonparties from burdensome discovery in an action in which they have little interest: the subpoena must issue from, and the deposition must take place in, the district where the witness is.

It is not surprising that FAC has cited no authority that has held that a United States court has the power to compel a nonparty witness residing overseas to attend a deposition in the United States, whether via Rule 30(b)(6) or otherwise.[5] As noted by the Fifth Circuit in *Cates v. LTV Aerospace Corp.,* 480 F.2d 620 (5th Cir.1973),

> a person designated by an organization pursuant to Rule 30(b)(6) could not be required to travel outside of the limits imposed by Rule 45( [c] ). In short, Rule 30(b)(6) provides a procedure to use in determining the proper person to depose. It does not deal with the issue of where the

deposition is to be taken .... This is reserved to Rule 45( [c] ).

*Id.* at 623; *see Stanford,* 1987 WL 26829, at *3.

In essence, any contention that a subpoena served pursuant to Rule 30(b)(6) need not comply with the requirements of Rule 45(c) would "fly in the face of the intent of Rule 45( [c] ) which is to 'protect nonparty witnesses from being inconvenienced by being compelled to travel inordinate distances to have their depositions taken.' " *Id.*

The instant decision to quash is not inconsistent with the prior decision to compel the production of documents from PW–UK pursuant to an enforceable Rule 45 subpoena. Compelling the production of documents does not present the inconvenience targeted by Rule 45(c). It is one thing to require document production and another to force the presence of a nonparty witness in a foreign land. As discussed above, the Federal Rules of Civil Procedure provide territorial restrictions for deposition testimony of nonparties only. No such limitation is afforded to nonparties faced with a subpoena requiring document production.

■ Finally, FAC proposes that the subpoena be modified such that the location of the deposition be changed to a place other than New York. This, of course, would resolve the concerns of inconvenience addressed by Rule 45(c)'s 100–mile provision.[6]

---

**5.** The cases FAC does cite to do not support its proposition because those cases do not purport to address Rule 45's requirement that a subpoena be quashed it if calls for a witness to travel more than 100 miles from the place where the witness regularly transacts business. *Ghandi v. Police Department of City of Detroit,* 74 F.R.D. 115 (E.D.Mich.1977), cited by FAC, involved a document subpoena not subject to Rule 45(c)(3)(A)(ii), as opposed to a deposition subpoena. Regardless, in *Ghandi,* the witness in question, the FBI, maintained a field office in the district that had issued the subpoena. There was no question that the FBI regularly transacted business in person in the district as required by the Rule. In discussing deposition subpoenas under Rule 30(b)(6), the *Ghandi* court, in a footnote, distinguished service directed to one organization as the alter ego of another and service directed upon one part of a fully integrated whole. The court intimated that in the first category a court could not compel testimony of

those not meeting the restrictions of Rule 45(c), but in the second category, it could. *See id.* at 120 n. 6. It should also be noted that *Ghandi* was decided under former Rule 45, which permitted the court to designate a convenient location for nonparty depositions.

FAC also cited to *Fuller Co. v. Brown Minneapolis Tank and Fabricating Co.,* No. Civ. A. 86–6676, 1988 WL 33976, at *1 n. 1 (E.D.Pa. Apr. 5, 1988), which in no way supports FAC's position. In that case, the issue was whether a witness was a managing agent of a party rather than a mere employee. Indeed, the court expressly noted that unless the witness was a party's managing agent, "he could not be required to attend a deposition more than 100 miles away." *Id.*

**6.** It should be noted that while FAC has provided authority for this proposition, those authorities are inapplicable to the situation at bar because each concerns the deposition testimony of a *party,* not a *nonparty.* Rule 45(c)(3)(A)(ii) embraces the rights of the nonparty witness.

Yet Rule 45(a)(2) on its face prohibits any such action. It specifically provides that a "subpoena for attendance at a deposition *shall* issue from the court for the district designated by the subpoena *as the district in which the deposition is to be taken.*" Fed. R.Civ.P. 45(a)(2) (emphasis added). Thus the Federal Rules contemplate that deposition subpoenas issue only from the district in which the deposition is to occur. To modify the Subpoena at issue to require deposition in England would be to create a subpoena that *does not* issue from "the district in which the deposition is to be taken." [7]

Prior to 1991, FAC's suggestion would have been adopted. The pre–1991 version of Rule 45(d)(2)—most closely analogous to the present Rule 45(c)(3)(A)(ii)—provided as follows:

> A person to whom a subpoena for the taking of a deposition is directed may be required to attend at any place within 100 miles from the place where that person resides, is employed or transacts business in person, *or is served, or at such other convenient place as is fixed by an order of court.*

*Proposed Amendments to the Federal Rules of Civil Procedure,* 111 S.Ct. 711, 716 (1990) (emphasis added) (setting forth the text of the pre–1991 version of Rule 45).

The current version of Rule 45, however, omits the highlighted language and rephrases the Rule affirmatively to require that the court quash or modify a subpoena that does not meet its requirements. As stated in the Advisory Committee's Note pertaining to the 1991 amendment, Rule 45, as a whole, was revised, to, *inter alia,* "clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence." Subdivision (c) was added to Rule 45, and it "states the rights of the witnesses." Fed.R.Civ.P. 45(c) advisory committee's note. Thus the current Rule will not countenance modification of the Subpoena in the manner FAC suggests. If the deposition is to be conducted in England, the Subpoena shall not issue from this Court. As previously stated, Rule 45 contemplates that a deposition subpoena issue from the district in which the witness is and that the deposition be conducted in that district within 100 miles of the witness's residence, employ, or place in which he or she regularly transacts business.

It is important to bear in mind that if PW–UK *could* designate a partner or employee capable of responding to the Subpoena who meets the territorial proscription of Rule 45, the instant result most likely would be different. After all, personal jurisdiction has been established over PW–UK, and if it can designate a partner or employee to be deposed who would not bear the inconvenience Rule 45 is meant to curb, the Rule would not require that the subpoena be quashed. As stated above, however, submission by the parties precludes this possibility.[8] As it is undisputed that any witness from PW–UK capable of testifying pursuant to the Subpoena meets the territorial requirements of Rule 45(c), the Subpoena must be quashed.

### Conclusion

For the reasons set forth above, the motion to quash is granted.

It is so ordered.

---

7. According to PW–UK, it would be anomalous for FAC to suggest that if this Court cannot force a nonparty to come to the United States to be deposed, it can instead reach across international boundaries and compel a nonparty witness to submit to a deposition in a foreign country.

8. If there does exist a PW–UK employee or partner in New York or within 100 miles of the designated place for the deposition who PW–UK should designate to testify pursuant to Rule 30(b)(6) and who has not already been deposed, the Subpoena may be renewed and this decision reconsidered.