119 F.3d 143
 In re APPLICATION OF SARRIO, S.A., for Assistance before
Foreign Tribunal.
CHASE MANHATTAN CORPORATION, Respondent-Appellee,
Kuwait Investment Authority, Grupo Torras S.A., Torraspapel
S.A., Torras Hostench London, Ltd., Movants-Appellees,
v.
SARRIO S.A., Applicant-Appellant.
 No. 1543, Docket 95-9157.
 United States Court of Appeals,
Second Circuit.
 Argued May 28, 1996.
Decided July 15, 1997.
 
 William R. Stein, Washington, DC (Alan G. Kashdan, Roberta Koss, Hughes, Hubbard & Reed, Washington, DC, of counsel), for Applicant-Appellant.
 David Zaslowsky (Lawrence W. Newman, Baker & McKenzie, New York City, of counsel), for Movants-Appellees.
 Before: VAN GRAAFEILAND, WALKER and LEVAL, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 Sarrio S.A. appeals from a protective order of the United States District Court for the Southern District of New York (Patterson, J.) denying discovery of certain documents subpoenaed from Chase Manhattan Bank, N.A. ("Chase"), in a proceeding instituted by Sarrio under 28 U.S.C. § 1782. The district court's view was that § 1782 permits discovery only of documents in the United States and that, where Chase had sent documents maintained abroad to the United States to be reviewed by counsel for determination whether they were required to be produced, the attorney-client privilege sheltered those documents from discovery under § 1782. Because on appeal Chase has withdrawn its assertion of attorney-client privilege, removing the basis upon which the district court quashed the subpoena, we remand to the district court for further proceedings to determine whether Sarrio is entitled, either upon its prior subpoena or under a new subpoena, to disclosure of the documents.
 
 Background
 
 2
 Sarrio is a Spanish company engaged in a contract dispute in the Spanish courts against the Kuwait Investment Authority ("KIA") and a group of KIA's subsidiaries, here collectively referred to as Grupo Torras. In the Spanish litigation, Sarrio is seeking to assert KIA's responsibility for a liability of its subsidiaries, in reliance on a theory akin to our doctrine of "piercing the corporate veil." In support of this effort, Sarrio asked Chase, a lender to Grupo Torras, to produce commercial agreements, which might reveal aspects of the relationship between KIA and Grupo Torras that could justify piercing the corporate veil. Chase is headquartered in New York City. In seeking Chase's production in New York, Sarrio proposed to rely on *145s 1782, which provides that a "district court of the district in which a person resides or is found may order him ... to produce a document ... for use in a proceeding in a foreign ... tribunal."[1]
 
 
 3
 In February 1994, Sarrio's counsel notified Chase's New York counsel that Sarrio planned to apply to the United States District Court in the Southern District of New York for discovery of the documents under § 1782. Sarrio's counsel provided Chase with an informal draft of the proposed subpoena. It was apparent to Chase's counsel from the text of the draft subpoena that the requested documents related to transactions of Chase branches in England and Spain. Chase's counsel directed those branch offices to send the pertinent transaction files to New York so that he could examine and, if appropriate, produce the documents covered by the anticipated subpoena.
 
 
 4
 In April 1995, Sarrio's attorney wrote to Chase's counsel, inquiring about the documents. Chase's counsel replied on April 26 that he was in possession of documents covered by the draft subpoena and would produce them "upon receipt of a subpoena."
 
 
 5
 Sarrio then instituted a proceeding in the district court against Chase and Grupo Torras seeking permission to serve a subpoena on Chase under § 1782. The court granted permission on May 23, 1995, and Sarrio proceeded to serve its subpoena on Chase. The subpoena served differed from the previously delivered draft in that it sought only documents "located within the United States."[2]
 
 
 6
 KIA and Grupo Torras moved for a protective order barring the disclosure. Chase also objected to the subpoena on various grounds, including
 
 
 7
 that it calls for the production of documents protected from discovery by reason of the attorney-client privilege. This request would call for documents that are only present in the United States for an attorney's review of the documents and could not have been in the United States otherwise and not subject to this subpoena.
 
 
 8
 The district court sustained Chase's claim of privilege. It ruled that Chase was not obligated to produce documents that were held abroad by Chase but delivered to New York to be reviewed by counsel. Sarrio appeals.
 
 Discussion
 
 9
 The district court found that Chase properly invoked the attorney-client privilege. The court reasoned that § 1782 authorizes discovery through United States courts only of materials found in the United States. Accordingly, Sarrio could not use § 1782 to obtain documents held by Chase in foreign countries. Because the documents came to the United States within reach of § 1782 only because Chase brought them here for review by its counsel so he could provide legal advice about compliance with a discovery demand, the court ruled that the documents were protected by the attorney-client privilege. The court reasoned that, without exposing the client to otherwise unavailable discovery,
 
 
 10
 [a] lawyer should be able to provide advice to his client with respect to the potential discoverability of documents without having to travel to where the documents are located.... Public policy favors open and frank communications between a lawyer and his or her client and prompt review of a client's documents by a lawyer are a goal of federal discovery consonant with this policy.
 
 
 11
 In re Application of Sarrio SA, No. 9-372, 1995 WL 598988, at * 3 (S.D.N.Y. Oct. 11, 1995).
 
 
 12
 Assuming, without deciding, that the district court was correct that discovery under § 1782 may reach only evidence located in the United States, Chase had a substantial claim that the documents subpoenaed here were protected by the attorney-client privilege. The Supreme Court's discussion in Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), seems to provide principled authority, although in dicta, for recognizing attorney-client privilege here. In Fisher, a taxpayer under investigation by the IRS transferred pertinent documents to his attorney for legal advice. The IRS issued process to the attorney for production of the documents, and the taxpayer sought to bar production on grounds of his Fifth Amendment privilege against self-incrimination. The Court held that the Fifth Amendment privilege did not apply because a demand for production directed to the taxpayer's attorney would not compel the taxpayer to incriminate himself. Id. at 414, 96 S.Ct. at 1582. The Court went on, however, to consider whether compelling production in these circumstances would violate the attorney-client privilege. The Court reasoned that "[t]he purpose of the privilege is to encourage clients to make full disclosure to their attorneys." Id. at 403, 96 S.Ct. at 1577. If discovery of documents could be obtained more easily from attorneys than from their clients, clients would hesitate to show their documents to their attorneys and "it would be difficult to obtain fully informed legal advice." Id. at 403, 96 S.Ct. at 1577. Accordingly, where documents unobtainable by subpoena while in the possession of the client are transferred to a lawyer to obtain legal advice, making the documents available to process would defeat the purposes of the attorney-client privilege. Quoting Wigmore, the Court concluded that "[w]hen the client himself would be privileged from production of the document, either as a party at common law ... or as exempt from self-incrimination, the attorney having possession of the document is not bound to produce." Id. at 404, 96 S.Ct. at 1578 (italics omitted, ellipsis in original); cf. Colton v. United States, 306 F.2d 633, 639 (2d Cir.1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963) (stating, prior to Fisher, that "if the client could have refused [on fifth-amendment grounds] to produce such papers ... the attorney may do so when they have passed into his possession"). Although the Court ultimately ruled in Fisher that the documents held by the attorney were not privileged because they would not have been protected in the hands of his client, the Court's underlying reasoning appears to bear on Chase's transfer of its documents to New York to obtain its attorney's advice as to their discoverability.
 
 
 13
 The principle articulated in Fisher was expressed in terms of documents that would have been protected in a client's possession under some form of common law or constitutional privilege. Nevertheless, its reasoning would seem to apply also where the documents are not amenable to subpoena duces tecum because they lie outside the statutory limits of the court's power to compel production. Fisher 's rule arose from the policy of promoting open communications between lawyers and their clients. That policy would be jeopardized if documents unreachable in a foreign country became discoverable because the person holding the documents sent them to a lawyer in the United States for advice as to whether they were subject to production.
 
 
 14
 Of course, if § 1782 authorizes discovery outside the territorial boundaries of the United States, the documents Sarrio seeks were never out of reach and could not become privileged simply by virtue of their transfer to Chase's New York lawyer. As the Court cautioned in Fisher, "pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." 425 U.S. at 403-04, 96 S.Ct. at 1577. On its face, § 1782 does not limit its discovery power to documents located in the United States. In finding such a limitation, the district court relied in part on a Senate report asserting that the amendments providing for documentary discovery under the statute were intended to aid "in obtaining oral and documentary evidence in the United States." S.Rep. No. 88-1580, (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788 (emphasis added). The district court also noted the policy concerns raised in the submitted declaration of Professor Hans Smit, who prepared the final version of the statute. Professor Smit points out that construing the statute to reach evidence abroad would make United States courts "clearing houses" for discovery in litigation around the world. Apart from its demands on federal judicial resources, that construction would be apt to transform the effect of § 1782 from "assistance to foreign and international tribunals" to interference with those bodies. Thus, despite the statute's unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the United States.
 
 
 15
 A change of circumstances on appeal makes it unnecessary for us to decide either the geographic reach of § 1782 or whether the attorney-client privilege shields documents undiscoverable abroad but transferred to an attorney in the United States for advice on their amenability to § 1782 subpoena. Chase, whose assertion of the attorney-client privilege led the district court to deny the relief sought against it in the § 1782 proceeding, no longer asserts its privilege on appeal. When Sarrio appealed from the district court's ruling in favor of Chase, Chase submitted no opposition and furthermore has advised the court that it takes no position on this appeal.[3] (Letter from Robert R. Elliott III to Clerk, U.S. Court of Appeals for the Second Circuit (May 23, 1996)). Chase has thus waived the privilege by which it successfully defended itself in the proceeding below.
 
 
 16
 While the privilege confers important social benefits, it also exacts significant costs. It runs counter to the ordinary judicial interest in the disclosure of all relevant evidence. See In re John Doe Corp., 675 F.2d 482, 489 (2d Cir.1982). It "stands in derogation of the public's 'right to every man's evidence'." In re Horowitz, 482 F.2d 72, 81 (2d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973) (quoting 8 Wigmore, Evidence § 2192, at 70 (McNaughton rev.1961)). Thus, "since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." Fisher, 425 U.S. at 404, 96 S.Ct. at 1577. While Chase successfully relied on its privilege in the district court to defend against Sarrio's demands under § 1782, it has now waived that privilege and thus eliminated the reason that motivated the district court decision in its favor.
 
 
 17
 The attorney-client privilege in question, moreover, belongs solely to Chase. In re von Bulow, 828 F.2d 94, 100 (2d Cir.) ("the privilege belongs solely to the client"), cert. denied, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987). It can be asserted only by the client (or one authorized to do so on the client's behalf). Thus, if a client-witness waives its right to conceal matters it confided to its attorney, a party against whom the evidence is offered has no right to insist that the privilege nevertheless be observed. See United States v. Plache, 913 F.2d 1375, 1381 (9th Cir.1990) (defendant ex-officer of corporation in receivership has no right to assert attorney-client privilege of corporation to block admission of evidence at his criminal trial); Henderson v. United States, 815 F.2d 1189, 1192 (8th Cir.1987) (defendant lacked standing to object to testimony of former attorney of girlfriend on basis of attorneyclient privilege, which "belongs to and exists solely for the benefit of the client."); 8 Wigmore, Evidence § 2321 (McNaughton rev. 1961 & Supp.1987). This does not mean that standing to oppose subpoenas issued under § 1782 is limited to the subpoenaed witness. We have recognized, though implicitly, that parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties. See In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India, 385 F.2d 1017 (2d Cir.1967) (quashing subpoenas directed to third-party witness on motion of party aggrieved by discovery order); see also In re Request for Int'l Judicial Assistance, 687 F.Supp. 880, 887 (S.D.N.Y.1988) (finding that targets of foreign inquiry have standing to oppose § 1782 discovery order directed to third parties on grounds that documents were outside the statute's scope), rev'd on other grounds 936 F.2d 702 (2d Cir.1991) (no discussion of standing issue). As the Sixth Circuit explained, the ultimate targets of a § 1782 discovery order issued to third parties have "standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute." In re Letter Rogatory from Justice Court, Montreal, 523 F.2d 562, 564 (6th Cir.1975). Because Congress has intervened to define the scope of United States judicial assistance in response to letters rogatory, "a party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of ... § 1782." Id.; see also In re Letter of Request from Crown Prosecution Serv. of United Kingdom, 870 F.2d 686, 689 (D.C.Cir.1989) ("[O]ne against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused.").
 
 
 18
 But the adverse party's right to challenge the lawfulness of the court's order of disclosure does not entail a further right to force recognition of a privilege that has been relinquished by its holder. Grupo Torras may well have standing to contend that Sarrio's subpoena to Chase was unenforceable under the terms of the enabling statute. But is does not have standing to assert an attorney-client privilege belonging to Chase.
 
 
 19
 Although we have found no fault with Judge Patterson's order quashing the subpoena directed against Chase, we conclude that Chase's subsequent waiver of its privilege removes the basis for that order, moots the appeal, and requires that we remand for new proceedings in the district court to determine whether Sarrio is entitled to require production of the documents under § 1782. We therefore remand for renewed consideration of Sarrio's entitlement under § 1782, either under the earlier subpoena or under a new subpoena, to discover the Chase documents.[4]
 
 Conclusion
 
 20
 The case is remanded to the district court for further proceedings in accordance with this opinion. The mandate shall issue forthwith. Pending reassertion of jurisdiction of the district court, the parties shall maintain the status quo, absent authorization of the district court. Any appeal from the district court's decision on remand shall be referred to this panel for disposition.
 
 
 
 [1]
 The version of § 1782 in effect at the relevant time provided:
 (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a ... request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.... The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
 A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.
 (b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.
 
 
 [2]
 The subpoena instructed that the "request for production is intended to cover all documents in the possession, custody or control of Chase, including documents in the possession, custody or control of counsel for Chase, to the extent such documents are now or have been located within the United States at any time on and/or after May 1, 1995."
 
 
 [3]
 Chase's change of position is perhaps attributable to the fact that, according to its attorney's letter, after the district court ruled in Chase's favor, Chase sent the documents abroad once again, thus eliminating the circumstance that motivated its claim of privilege
 
 
 [4]
 Whether and to what extent Chase's apparent removal of the documents from the United States may affect Sarrio's discovery rights we leave to the district court