295 F.3d 171
 In re Application of Asher B. EDELMAN, Museum Partners, Musee Partners, Edelman Value Partners, L.P., Edelman Value Fund and Wimbledon Edelman Select Opportunities Hedge Fund for an Order to conduct discovery for use in a foreign proceeding.
Asher B. Edelman, Museum Partners, Musee Partners, Edelman Value Partners, L.P., Edelman Value Fund And Wimbledon Edelman Select Opportunities Hedge Fund, Petitioners-Appellants,
v.
Claude Taittinger, Respondent-Appellee.
 Docket No. 01-7257.
 United States Court of Appeals, Second Circuit.
 Argued: November 13, 2001.
 Decided: July 01, 2002.
 
 COPYRIGHT MATERIAL OMITTED Mark S. Cohen, New York, NY, (Stanley S. Arkin, Steven K. Barentzen, Arkin Kaplan & Cohen, LLP, New York, NY; Tracy E. Makow, Stewart Occhipinti & Makow, LLP, New York, NY, of counsel), for Petitioners-Appellants.
 James V. Masella, III, New York, NY, (D. Stuart Meiklejohn, Sullivan & Cromwell, New York, NY, of counsel), for Respondent-Appellee.
 Before FEINBERG, CARDAMONE, and POOLER, Circuit Judges.
 CARDAMONE, Circuit Judge.
 
 
 1
 Congress enacted a statute to provide equitable and efficacious discovery for use in foreign and international proceedings. The statute, 28 U.S.C. § 1782, aimed to make discovery of evidence for use in foreign litigation simple and fair. This appeal focuses on whether a foreign national temporarily in the United States is subject to being subpoenaed and deposed here as an aid to ongoing litigation in France. As the reader will see — and to paraphrase the Bible — many, subject to being subpoenaed, may be found; but few will be deposed.
 
 
 2
 This is an appeal from a district court order quashing a subpoena for the deposition of a witness in the United States for use in securities litigation in France. At issue is the scope of 28 U.S.C. § 1782(a), which allows interested persons access to discovery orders to gain evidence for use in foreign litigation. In the instant case, one party to the French action has already availed itself of the § 1782(a) discovery mechanism, and now the other party is trying to do the same. Our task is to identify the required nexus between the district in which the discovery order is sought and the prospective deponent. Specifically, we must decide whether an individual, who lives and works abroad, may be subject to being subpoenaed for deposition pursuant to § 1782(a) while traveling in the United States. The district court held that § 1782(a) does not allow the taking of a deposition under these circumstances. Because we think that holding unduly restricts the statute, we vacate the order that quashed the subpoena and remand the case.
 
 BACKGROUND
 
 3
 Petitioners who seek discovery pursuant to § 1782(a) are Asher B. Edelman and five investment funds controlled by him (collectively, Edelman or petitioner). They are minority shareholders in a French corporation, Société du Louvre (Société or French company), whose shares are traded on the Paris Stock Exchange. Between 1997 and 1999 Edelman made three separate offers to buy Société, all of which were turned down. He had directed his offers to the chairwoman of Société's Board of Directors, but respondent Claude Taittinger (Taittinger or respondent), who is a member of the Board of Directors of the French company, wrote Edelman a letter in each case rejecting his offer. Taittinger is also the head of Taittinger, S.A., another French company, which is Société's controlling shareholder, and a company famous to the champagne cognoscenti.
 
 
 4
 Société has sued Edelman in France alleging wrongful manipulation of the market for Société securities on the grounds that Edelman never intended to follow through on his offers to buy the French company. Edelman has filed a counterclaim in the French action asserting that Taittinger, S.A. mismanaged Société for the benefit of the Taittinger family and to the detriment of Société and its minority shareholders.
 
 
 5
 Société sought and obtained orders for the issuance of several subpoenas from a federal court in the United States, pursuant to 28 U.S.C. § 1782(a), to gain information for use in the French litigation. The French company subsequently secured documentary evidence from Edelman and some of his companies, including one which is not a party to the French litigation or to the present action.
 
 
 6
 In response, Edelman sought his own order for the issuance of subpoenas under the authority of § 1782(a). U.S. District Court Judge Barbara S. Jones, sitting in the Southern District of New York, issued an order on October 20, 2000 authorizing subpoenas duces tecum to be issued to several named individuals and entities. According to the application for the order, research revealed that each of the named individuals and entities resides or may be found in the Southern District of New York. Respondent Taittinger's name did not appear in this application for subpoenas. But the order submitted by Edelman and signed by the district court judge also included a blanket authorization for the issuance of subpoenas for deposition testimony to any "additional individuals and entities with knowledge and information."
 
 
 7
 When the October 20, 2000 order was issued by Judge Jones, Taittinger was neither present in the Southern District nor named in the order. Three days later, while at the Gagosian Art Gallery in New York City, Taittinger was served with a subpoena for his deposition testimony and, in addition, directed by the subpoena to produce documentary evidence pursuant to the order's blanket authorization.[1] Edelman avers that Taittinger was in New York on business at the time of service, a statement Taittinger denies. No one disputes, however, that Taittinger has knowledge relevant to the French litigation.
 
 
 8
 After being served with the subpoena, Taittinger, a French citizen, returned to France where he heads a substantial business and maintains his primary residence. On December 15, 2000 he moved to quash the subpoena, contending that § 1782(a) did not authorize it. He also insisted that since he was not a party to or an officer of a party to the French litigation, he could not be compelled to travel more than 100 miles from his residence to be deposed. See Fed.R.Civ.P. 45. Agreeing with respondent that, as a matter of law, the subpoena was improper, District Court Judge Lawrence M. McKenna, before whom the motion to quash was heard, granted the motion. Judge McKenna reasoned that inasmuch as the testimony and documents sought were located in France, it was not proper to provide discovery consisting of evidence maintained in a foreign jurisdiction. Having quashed the subpoena on those grounds, Judge McKenna did not address the Rule 45 issue.
 
 
 9
 Meanwhile, U.S. District Court Judge Alvin K. Hellerstein, also sitting in the Southern District, was assigned to hear motions to quash two other subpoenas that had been issued by petitioner to individuals who had been named in the October 20th discovery order. Judge Hellerstein quashed one of the subpoenas because it had not been served properly, and denied the other motion to quash, thereby permitting the deposition of that French resident to proceed in the Southern District. It is in this setting that Edelman appeals the order quashing the subpoena served on Taittinger.
 
 DISCUSSION
 I Standard of Review
 
 10
 Review of a decision regarding a § 1782(a) order proceeds in two steps: first, we construe de novo the language of the statute; and, then, if necessary, we decide whether the district court abused its discretion in deciding the case. See Esses v. Hanania (In re Esses), 101 F.3d 873, 875 (2d Cir.1996) (per curiam). That is, where we think the requirements of § 1782 have been properly construed, we turn to the district court's decision in the case before it and review that decision only for an abuse of discretion. Lancaster Factoring Co. v. Mangone, 90 F.3d 38, 42 (2d Cir.1996).
 
 
 11
 Typically, we review the issuing court's exercise of discretion at the second step of the review process. See, e.g., Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1097 (2d Cir.1995) (Euromepa I). Here, Judge Jones never considered the specific question of whether Taittinger (who was not named in the discovery order the judge signed) should be deposed, and in effect gave petitioner unfettered discretion to subpoena any "additional individuals and entities with knowledge and information." Taittinger, as noted, was subpoenaed pursuant to that blanket authorization. Hence, it was at the hearing on the motion to quash the subpoena that the district court first had an opportunity to exercise its discretion with respect to the proposed deposition of Taittinger. Due to the procedural posture of this case, we will, in the second step of our review, address the quashing court's exercise of discretion. We turn now to the first step, which is an analysis of the statute.
 
 II 28 U.S.C. § 1782(a)
 Section 1782(a) of Title 28 provides that
 
 12
 [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal.... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
 
 
 13
 At bottom, this statute affords access to discovery of evidence in the United States for use in foreign proceedings. Breaking down § 1782(a) into its constituent elements, we have identified the following requirements
 
 
 14
 (1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or "any interested person."
 
 
 15
 Esses, 101 F.3d at 875 (emphasis added).
 
 
 16
 We have ruled in the past on the second and third elements of the statute. See, e.g., Nat'l Broad. Co. v. Bear Stearns & Co., 165 F.3d 184, 191 (2d Cir.1999) (private arbitral forum in a foreign country is not a "foreign or international" tribunal); Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 29 (2d Cir.1998) (Euromepa II) (neither pending French bankruptcy proceeding that resolved merits of dispute nor potential motion to reopen judgment of French Court of Appeal qualify as "proceeding before a foreign tribunal"); Esses, 101 F.3d at 875 (brother of person who had died intestate in foreign country was "interested person" under § 1782); see also Foden v. Gianoli Aldunate (In re Gianoli Aldunate), 3 F.3d 54, 58-61 (2d Cir.1993) (no implicit requirement in § 1782(a) that evidence be discoverable under law of foreign jurisdiction). Until now neither we, nor any other circuit so far as we are aware, has ruled on the scope of the first requirement of § 1782(a), that is to say, that the deposed be found in the district.
 
 
 17
 Respondent urges us to read § 1782(a) to authorize discovery only of evidence located in the United States, or at least to recognize a procedural requirement that the issuance of the discovery order coincide with the prospective deponent's presence in the district. Indeed, one district court in our circuit has concluded, at least with respect to documentary evidence, that § 1782(a) only applies to evidence located in the United States. In re Sarrio S.A., No. 9-372, 1995 WL 598988, at *2 (S.D.N.Y. Oct.11, 1995) (Sarrio I), rev'd on other grounds & remanded, Chase Manhattan Corp. v. Sarrio S.A. (In re Sarrio, S.A.), 119 F.3d 143 (2d Cir.1997) (Sarrio II).
 
 
 18
 In granting respondent's motion to quash the subpoena, the district court drew an analogy to Sarrio I's statement that documentary evidence located in another country is beyond the scope of § 1782(a). It reasoned that the evidence at issue — Taittinger's knowledge regarding the management of Société — was located in France for the purposes of § 1782(a) because Taittinger resides and works in France.
 
 
 19
 Since Sarrio is the only authority cited by the district court, we examine that case in some detail. In Sarrio I, the trial court placed limits on the discovery of documents belonging to respondent Chase Manhattan. Id. at *3. The documents in question had been sent from Chase Manhattan's European branches to company headquarters in New York City for inspection by in-house counsel to determine their responsiveness to a proposed § 1782(a) subpoena. Id. at *1. The proposed subpoena was never issued; rather, the party seeking discovery obtained an order for Chase Manhattan's documents located in the United States. In limiting the subpoena issued pursuant to that order, the district court noted that the only reason those documents were in the United States was that Chase Manhattan had been led to anticipate a different, much broader subpoena. Id. at *3 n. 4. Against this factual backdrop and despite the fact that the documents were physically present in the United States, the court found they were really located in Europe. It stated that § 1782 was not aimed at providing discovery of evidence within a foreign jurisdiction. Id. at *2.
 
 
 20
 An appeal taken in that case was resolved on other grounds. See Sarrio II, 119 F.3d at 148. Although we did not reach the issue of whether § 1782(a) only authorizes discovery of documents located in the United States, dicta in Sarrio II supports the district court's reasoning in Sarrio I. See id. at 146-47. Referring to the district court's analysis of the legislative history behind § 1782(a), Sarrio II noted that "despite the statute's unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the United States." Id. at 147 (emphasis added). Although the appellate panel apparently agreed with the district court judge's order limiting discovery, subsequent unrelated developments rendered the appeal moot. Id. at 148.
 
 
 21
 Notwithstanding the seemingly broad rule announced in Sarrio I that § 1782(a) only applies to evidence located in the United States, there may be reason to treat documentary evidence, which was at issue in that case, different from testimonial evidence, which is at issue in the case now before us. Common sense makes us think that documents are maintained in a particular place, but the same is not true for individuals. What a person will testify to is located wherever that person is found. Further, we had no occasion to affirm the rule announced in Sarrio I, and in fact expressly declined to do so. See Sarrio II, 119 F.3d at 146 ("assuming, without deciding, that the district court was correct that discovery under § 1782 may reach only evidence located in the United States").
 
 III Analysis of § 1782's First Requirement
 A. Statutory Language
 
 22
 Unlike documentary evidence, § 1782(a) contains an express geographic restriction on access to testimonial evidence. The statute states that a person may be subject to a § 1782(a) order only if he "resides or is found" in the district in which the issuing court sits. We need look no further therefore than the words of the statute to discern a geographic limitation with respect to testimonial evidence. Documentary evidence is another matter because a subpoena is served on a person who has custody of or access to the documents, not on the papers themselves. For that reason neither court in the Sarrio case addressed the "resides or is found" language of the statute.
 
 
 23
 When interpreting the meaning of a statute — the task we have before us — the starting point of inquiry is of course the language of the statute itself. See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Where the statutory terms are clear, our inquiry is at an end, see Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981), and where they are not otherwise defined, individual words in a statute carry "their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979); Burgo v. Gen. Dynamics Corp., 122 F.3d 140, 143 (2d Cir.1997). Edelman does not dispute that Taittinger resides in France, and so what remains for us to construe is the phrase "is found" in the Southern District. As earlier observed, Taittinger was not in the Southern District at the time petitioner applied for and received the discovery order. But he was served personally with a subpoena three days later in the Southern District. Edelman contends valid personal service alone shows that Taittinger was found in the Southern District, that is, he was physically present there, even though temporarily.
 
 
 24
 1. Respondent's Argument. Taittinger insists that the words "is found" mean that a prospective deponent must be in the district at the precise time when the district court issues the discovery order. 28 U.S.C. § 1782(a) (emphasis added). This is a possible interpretation of the statutory language. In relevant part, the statute provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement." 28 U.S.C. § 1782(a). Since the phrase "resides or is found" is written in the present tense, it could mean, as respondent suggests, that a deponent must be residing or be found in the district contemporaneously with the district court's issuance of the discovery order.
 
 
 25
 2. Petitioner's Argument. Yet, as petitioner points out, such a temporal limitation on the district court's authority would be a novel procedural requirement. Edelman asserts that the phrase "resides or is found" instead relates to the service of the subpoena — i.e., a subpoena issued pursuant to a discovery order may be served on a district resident or a nonresident who is physically present in the district when served. Under both readings, the phrase "resides or is found" simply constitutes a geographic limitation.
 
 B. Our View of the Statutory Language
 
 26
 We think another part of § 1782(a) supports a flexible reading of the phrase "resides or is found." Section 1782(a) expressly provides that "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." Cf. H.R.Rep. No. 80-308, at A153 (1947) (explaining that provisions of Rule 45(c) address the fees and mileage of witnesses, so there was no need to include these matters in the text of § 1782(a)). One of these procedural rules, Rule 45, states: "a subpoena may be served at any place within the district of the court by which it is issued." Fed.R.Civ.P. 45(b)(2). The same rule further states that unless a person is a party to the litigation or an officer of a party, he cannot be compelled to travel more than 100 miles from where he resides or works to be deposed. Fed.R.Civ.P. 45(c)(3)(A)(ii).
 
 
 27
 That particular subdivision of Rule 45 gives nonparty deponents protection from expending time and money to comply with a subpoena. See Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 779 (9th Cir.1994). The purpose of the 100 mile exception is to protect such witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest. See Price Waterhouse LLP v. First Am. Corp., 182 F.R.D. 56, 63 (S.D.N.Y.1998). Further, Rule 26(c) of the Federal Rules authorizes a district court to modify or even quash a subpoena in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Together, Rules 45(c)(3)(A)(ii) and 26(c) provide ample protection from burdensome travel to those persons from whom discovery is sought under § 1782(a). Accordingly, we see no need to interpret the statute's language to provide even more protection to a nonresident prospective deponent.
 
 
 28
 In addition, we question the degree of "protection" that would be afforded by the temporal restriction suggested by Taittinger. Although it would allow him to avoid a deposition, it does not appear that such a rule would be of practical significance in the future. To comply with the restriction, a party seeking discovery would have to wait until the unsuspecting prospective deponent wanders into the district, and then rush to the courthouse to have a judge sign an already-drafted discovery order (or leave a drafted order with the judge and place a call requesting a signature once the prospective deponent enters the district). We see no benefit in requiring those involved in this process to be compelled to jump through such procedural hoops.
 
 
 29
 Again, such a scenario seems farfetched because a district court can refuse to issue a § 1782(a) discovery order if the petitioner appears to be abusing the statute in this oppressive way. Limits may be proscribed on discovery or an existing order may be quashed under Rule 26(c). The district court's prudent exercise of discretion also counters the assertion that we risk setting an example that encourages other countries to nab our citizens traveling abroad and subject them to extensive discovery procedures as an aid to ongoing proceedings in U.S. courts.
 
 
 30
 Moreover, the question of what it means to be found in a particular locale is already the subject of well-settled case law on territorial jurisdiction. In Burnham v. Superior Court of California, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (plurality opinion), the Supreme Court authorized the exercise of personal jurisdiction based on nothing more than physical presence. See also Kadic v. Karadzic, 70 F.3d 232, 246-47 (2d Cir.1995) (upholding Southern District's exercise of personal jurisdiction over foreign national served with summons while physically present in Southern District). Given that this so-called tag jurisdiction is consistent with due process, we do not think that § 1782(a), which is simply a discovery mechanism and does not subject a person to liability, requires more. Cf. First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16, 20 (2d Cir.1998) ("[A] person who is subjected to liability by service of process far from home may have better cause to complain of an outrage to fair play than one similarly situated who is merely called upon to supply documents or testimony."). It is consistent construction to endow the phrase "or is found" in § 1782 with the same breadth as that accorded it in Burnham, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631. Accordingly, when a potential witness comes to the United States it is neither unfair nor inappropriate under the statute to undertake his discovery here.
 
 C. Support From Legislative History
 
 31
 In determining the meaning of a statute, "we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). Since we recognize that it is possible to interpret the statutory language in the way suggested by respondent, we examine the legislative history to gain insight into Congress' purposes. In 1948 Congress enacted § 1782, authorizing federal courts to order discovery for the purpose of assisting foreign tribunals. See Act of June 25, 1948, ch. 646, 62 Stat. 949 (codified as amended at 28 U.S.C. § 1782); see also Walter B. Stahr, Discovery Under 28 U.S.C. § 1782 for Foreign and International Proceedings, 30 Va. J. Int'l L. 597, 600-05 (1990) (chronicling history of federal legislation authorizing discovery to aid proceedings abroad). The 1948 version of § 1782(a) authorized "[t]he deposition of any witness residing within the United States." Act of June 25, 1948, ch. 646, 62 Stat. 949, 949 (emphasis added). Under the 1948 language, Taittinger could not be deposed in the United States because he resides in France.
 
 
 32
 However, Congress amended § 1782(a), in part, the next year by striking out the word "residing." Act of May 24, 1949, Pub.L. No. 81-72, § 93, 63 Stat. 89, 103. Thus, the statute as amended allowed the federal courts to authorize the deposition of "any witness within the United States." According to the House Report on the amendment, the change was intended to "correct[] restrictive language in section 1782 ... and permit[] depositions in any judicial proceeding without regard to whether the deponent is `residing' in the district or only sojourning there." H.R.Rep. No. 81-352, at 40 (1949), reprinted in 1949 U.S.C.C.A.N. 1254, 1270 (emphasis added). By definition, a sojourn is "a temporary stay (as of a traveler in a foreign country)." Webster's Third New International Dictionary 2166-67 (Philip Babcock Gove, ed.1981).
 
 
 33
 Continuing the liberalizing trend, § 1782(a) was again amended in 1964 to authorize other forms of discovery, in addition to depositions, to describe the types of foreign proceedings for which discovery may be granted, and to describe who may petition for discovery. Act of Oct. 3, 1964, Pub.L. No. 88-619, § 9(a), 78 Stat. 997; see also S.Rep. No. 88-1580, § 9 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788-90 (explaining the amendments). The only subsequent amendment occurred recently when the legislature added language in 1996 to clarify that § 1782(a) could be used to provide discovery for use in criminal proceedings abroad. Act of Feb. 10, 1996, Pub.L. No. 104-106, div. A, tit. XIII, § 1342(b), 110 Stat. 486. Thus, § 1782(a) currently provides, in relevant part, that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation."
 
 
 34
 In sum, Congress has expressed as its aim that the statute be interpreted broadly and that courts exercise discretion in deciding whether, and in what manner, to order discovery in particular cases. See S.Rep. No. 88-1580, § 9, reprinted in 1964 U.S.C.C.A.N. at 3788 (noting that § 1782(a) "leaves the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable"). To construe § 1782(a) broadly is consistent with that aim. Taittinger's proposed limitation, however, would place formalistic strictures on the district court. Such limitations do not comport with § 1782(a)'s purpose to be "simple and clear to provide a flexible procedure for the taking of depositions." H.R.Rep. No. 80-308, at A153.
 
 
 35
 Further, the 1949 amendment explicitly broadened the class of people subject to discovery beyond United States residents. Congress made this change expressly so that people temporarily in a district may be ordered to give testimony pursuant to § 1782(a). No subsequent amendment evidences a contrary intent. It would be anomalous for Congress to want visitors to be subject to a discovery order and for the statute to have a broad reach, and at the same time for us to direct that there be a precise match between the time the order issues and the visitor's presence in the district.
 
 
 36
 Consequently, regardless of any implicit limits on the location of documentary evidence, we hold that if a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is "found" in that district. As a matter of law, a person who lives and works in a foreign country is not necessarily beyond the reach of § 1782(a) simply because the district judge signed the discovery order at a time when that prospective deponent was not physically present in the district. The district court therefore erred when it quashed the subpoena on the grounds that Taittinger was not "found" in the United States.
 
 IV Rule 45
 
 37
 Our determination that the district court erred by interpreting § 1782(a) too narrowly does not mean that Taittinger must be deposed. Under Rule 45 of the Federal Rules of Civil Procedure, respondent contends that he cannot be forced to testify in the United States. According to Rule 45(c)(3)(A)(ii),
 
 
 38
 [o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it ... requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person.
 
 
 39
 As already observed, respondent raised this argument below, but the trial court did not decide the issue because it disposed of the case on other grounds. Yet Rule 45 may bar the deposition notwithstanding our holding that Taittinger is not beyond the scope of § 1782(a). On remand, the district court should consider whether Rule 45(c)(3)(A)(ii) requires the subpoena to be quashed. Petitioner contends that Taittinger qualifies as an "officer" of a party in the French litigation (Société), and therefore can be compelled to travel more than 100 miles from home and work. If such is found to be the case, the subpoena may be sustained.
 
 V Exercise of Discretion
 
 40
 We also note that the district court that heard the motion to quash did not reach the discretionary issue of whether Taittinger should be deposed in the Southern District. Even if the district court decides that Rule 45(c)(3)(A)(ii) does not bar the deposition, it will still need to make that discretionary determination.
 
 
 41
 Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a) — both over whether to grant a discovery order and, if so, what limits to place on that discovery. See S.Rep. No. 88-1580, § 9, reprinted in 1964 U.S.C.C.A.N. at 3788. Relying on our case law, we set out some factors the district court should consider in deciding whether or not to quash the subpoena.
 
 
 42
 There are two oft-cited goals of § 1782(a). The statute has the twin aims of 1) providing equitable and efficient means to assist parties engaged in international litigation and, by so doing, 2) inviting foreign countries to provide similar assistance to our courts. See S.Rep. No. 88-1580, reprinted in 1964 U.S.C.C.A.N. at 3783; Malev Hungarian Airlines v. United Techs. Int'l, Inc. (In re Malev Hungarian Airlines), 964 F.2d 97, 100 (2d Cir.1992). Further, § 1782(a) should not be applied in a way that will create obvious confusion or skew the results in the foreign litigation. See Euromepa I, 51 F.3d at 1101; see also S.Rep. No. 88-1580, reprinted in 1964 U.S.C.C.A.N. at 3783 (explaining that § 1782(a) is to provide equitable procedures for the benefit of litigants in international litigation).
 
 
 43
 Accordingly, the district court should consider the effect of its decision on the "procedural parity" of the parties to the French litigation. Euromepa I, 51 F.3d at 1102; see also Ishihara Chem. Co. v. Shipley Co. (In re Ishihara Chem. Co.), 251 F.3d 120, 127 n. 5 (2d Cir.2001) (expressing concern over application of § 1782(a) that it leads to "imbalanced discovery" between parties to foreign litigation). In this case, Société has already obtained discovery in the United States. In fact it was the French company, with which Taittinger is closely associated, that first filed for a discovery order under § 1782(a). The district court should consider these factors if it reaches the point of having to exercise its discretion.
 
 CONCLUSION
 
 44
 For the reasons stated, we vacate the district court's order quashing the subpoena and remand to Judge McKenna for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Edelman has dropped this request for documentary evidence located outside of the United States. However, insofar as Edelman continues to seekany documents from Taittinger, he may be overstepping the bounds of the discovery order since it appears to authorize petitioner to obtain only testimonial evidence from Taittinger. In contrast, the discovery order conspicuously authorized the issuance of subpoenas duces tecum to the named individuals and entities. On remand, the district court may wish to consider this issue.